CALDWELL *v.* LYON *et al.*

(*Nashville*, December Term, 1934.)

Opinion filed March 20, 1935.

608

Cox, Taylor & Epps and W. E. Miller, all of Johnson City, Worley, Hauk & Minter, of Kingsport, Joe Brown and J. E. O'Dell, Jr., both of Bristol, and John F. Blevins, of Blountville, for appellant.

John R. Todd, of Kingsport, B. R. Sams, of Bluff City, Susong, Susong & Parvin, of Greeneville, Burrow & Burrow, of Bristol, Chas. T. Herndon, Jr., of Kingsport, H. H. Smith, of Blountville, and R. B. Dade and Carl Kirkpatrick, both of Kingsport, for appellees.

Mr. Justice DeHaven delivered the opinion of the Court.

Complainant, Joseph A. Caldwell, was elected to the office of county judge of Sullivan county for the term of eight years at the general election held in August, 1926. The act creating the office of county judge, chapter 375, Private Acts of 1921, was repealed by chapter 196, Private Acts of 1933, and the office of chairman of the county court was created by chapter 195, Private Acts of 1933. By the terms of this latter act the quarterly county court of Sullivan county was required to elect a chair-

man of the county court at its regular April term, 1933, to hold office until the first Monday in January, 1934, at which time the quarterly county court was to elect his successor for the term of one year, or until his successor was elected and qualified. It was further provided in said act that the chairman of the quarterly county court "shall exercise and perform all the duties and functions now provided by law in counties having a County Chairman." Section 2.

At its regular April term, 1933, the quarterly county court elected complainant, Joseph A. Caldwell, chairman of the county court for the term expiring the first Monday in January, 1934. Complainant was re-elected to said office at the January term, 1934, for the term of one year, and was again re-elected to said office at the January, 1935, term of said court for the term of one year.

Complainant accepted the office of chairman of the county court when elected thereto in April, 1933, January, 1934, and January, 1935, and assumed said office. It appears that complainant informed said court when he accepted the office of chairman that he considered the acts of 1933 to be unconstitutional and void, and that he fully reserved to himself all his rights as county judge, together with his right to challenge the validity of said acts. The county court acquiesced in these reservations, and complainant, under the conditions mentioned, accepted the office, accepted the reduced salary, and performed the duties and functions of the office.

The General Assembly of Tennessee, on January 15, 1935, enacted House Bill No. 91, which expressly abolished the office of chairman of the county court of Sullivan county and created the office of county judge. The

act named defendant, W. D. Lyon, to hold said office until the next regular biennial election to be held in August, 1936.

Complainant, Caldwell, on January 22, 1935, filed his bill in this cause attacking the constitutionality of the acts of 1933 and the act of 1935, and questioning the motives of the Legislature in their passage. Complainant in his bill asserts he is the legal holder of the office of county judge of Sullivan county and entitled to all the emoluments thereof. In the alternative, he takes the position that in the event the court be of the opinion that he is holding office under the 1933 Legislature, he be declared entitled to said office under such legislation and entitled to all the emoluments thereof. An injunction was sought to prevent defendant from in any way interfering with "complainant's office, and from exercising any alleged rights attempted to be created by said House Bill No. 91." The chancellor granted a temporary injunction.

Defendant demurred to the bill, and filed a sworn answer denying the equities of the bill. The cause was heard upon the demurrer and upon defendant's motion to dissolve the injunction. The chancellor sustained the demurrer, dissolved the injunction, and dismissed the bill.

Nine assignments of error are made in this court by appellant, Caldwell. These assignments, except the sixth, raise the question, in varying form, of the constitutionality of House Bill No. 91, passed January 15, 1935, and of chapters 195 and 196 of the Private Acts of 1933. The sixth assignment challenges the action of the chancellor in holding complainant estopped to question the constitutionality of said acts of 1933.

It is appellant's position in this case that said acts of 1933 being, as he now asserts, unconstitutional as colorable legislation enacted for the purpose of legislating him out of the office of county judge, he remained county judge *de jure* after September 1, 1934, when the eight-year term to which he had been elected expired, holding over under section 5, article 7, of the State Constitution, providing that "every officer shall hold his office until his successor is elected or appointed and qualified." He then asserts that House Bill No. 91, passed January 15, 1935, is unconstitutional in that it undertakes to name defendant county judge, when he (complainant) was occupying that office as a holdover.

█ Section 26, article 2, of the State Constitution provides, "nor shall any person in this State hold more than one lucrative office at the same time."

Appellant three times accepted election to the office of county chairman. He assumed the duties of that office. He accepted the salary of $1,200 per year attached thereto, as fixed by chapter 195, Private Acts of 1933. He now asserts that he was county judge during all the time he was county chairman, holding over after the expiration of his term.

The effect of appellant's acceptance of the office of county chairman vacated the office of county judge. A constitutional incompatibility existed, similar in its effect to that of the common law, and, as in the case of the latter, it is well settled that the acceptance of a second office of the kind prohibited operates *ipso facto* absolutely to vacate the first. *Calloway* v. *Sturm*, 1 Heisk. (48 Tenn.), 764; *State* v. *Grace*, 113 Tenn., 9, 82 S. W., 485; *State* v. *Slagle*, 115 Tenn., 336, 89 S. W., 326; 22 Ruling Case Law, 418; 46 Corpus Juris, 947.

The circumstance that appellant might have successfully assailed the constitutionality of said acts of 1933 as colorable legislation to displace him as county judge is now immaterial. He vacated that office when he accepted the office of chairman, and this vacation was effective regardless of whether or not he might have successfully attacked said acts.

In *Farrell* v. *City of Bridgeport*, 45 Conn., 191, it appears that the charter of the city provided for the appointment of policemen to hold office until regularly removed or suspended. Farrell held the office of policeman for three years under the charter, when the common council, under a power given by the charter to make ordinances relative to the city police, passed an ordinance that the appointment should be for one year. The court said:

"The council could not of itself, by the enactment of an ordinance declaring that a policeman shall hold his office by virtue of an annual appointment, put an end to the right of Farrell to hold the office to which he had been duly appointed in 1869; but the commissioners accepted the ordinance as the rule of their conduct, and subsequently to the passage thereof made all nominations for policemen for the term of one year; and Farrell, in consideration of the new and limited appointment, waived all claim to hold office under the former one; he accepted in 1872 an office for one year expressly established in place of and as a substitute for one of a different tenure; he intentionally discharged the duties and received the salary belonging to it; and by his acceptance and exercise of this new and substituted office surrendered all claim to, and must be holden to have resigned, the former one."

In *Handy* v. *Hopkins*, 59 Md., 157, it appears that four persons were elected county commissioners in 1879, and were in office at the time of the election in 1881; they were candidates for re-election and were returned as elected and commissions duly issued to them, which were accepted. The election of 1881 was declared void. It was held that the four could not be heard to claim that they were entitled to hold over by virtue of their election in 1879.

In the instant case appellant has held the office of chairman under three elections by the quarterly county court. The validity of his title to that office has never been questioned until now, when he raises the question himself. He now seeks to hark back to his alleged hold-over tenure as county judge. But this tenure, if it existed, was ended by his election as chairman on the first Monday in January, 1935. The rule is thus stated in 46 Corpus Juris, 970:

"One who has accepted an office under a new election, or a new appointment, cannot claim that his tenure is a continuation of that under his original election or appointment, and that he holds over by virtue of his former election or appointment."

██ ██ The fact that appellant accepted the office of chairman with reservations stated by him to the county court cannot prevent the application to him of the rule that his acceptance of the office of chairman vacated the office of county judge. There is no room in our jurisprudence for a qualified or conditional tenure of office. Appellant was under the necessity of either accepting the office to which he had been elected or rejecting it. The county court was without right or power to acquiesce in reservations with respect to appellant's ten-

ure of office. Public interest requires that all possible certainty exist in the election of officers and the beginning and expiration of their terms, and forbids that either be left to the discretion or vacillation of the person holding the office, or body having the appointive power. *State* v. *Grace,* 113 Tenn., 9, 16, 82 S. W., 485, 487. The court said in that case (one having to do with the withdrawal of an accepted resignation with the consent of a city council): "Official robes cannot be put off and assumed at the pleasure of individuals or officers." Appellant could not, we think, take the office of chairman under an understanding that he might, if he so elected, stand aside and attack the legal existence of the office he held.

Appellant contends that the act of 1935 (House Bill No. 91) is unconstitutional as colorable legislation, passed to displace him as county judge or chairman. Inasmuch as he was not county judge at the time of the passage of this act, that feature of the attack on it may be dismissed. The office of county chairman was expressly abolished by said act. The act creating that office was repealed. The office of county judge was created. If the form and structure of the governmental agency created by the act were substantially different from that of chairman, then said act is valid. At least two changes are made which go to the organic constitution of the office of county judge: (1) The term of office is changed from one year to eight years, and (2) the county judge is to be elected by the people instead of by the quarterly county court. The second of these is clearly fundamental. *Haggard* v. *Gallien,* 157 Tenn., 269, 8 S. W. (2d), 364; *Holland* v. *Parker,* 159 Tenn., 306, 17 S. W. (2d), 926.

The changes made being material and fundamental, it follows that the act is not open to the objection that it is colorable legislation adopted to displace appellant as chairman. Courts, in determining the validity of a statute, cannot inquire into the conduct and motives attributable to members of the General Assembly. *Peay* v. *Nolan*, 157 Tenn., 222, 7 S. W. (2d), 815, 60 A. L. R., 408; *State* v. *Lindsay*, 103 Tenn., 625, 53 S. W., 950.

██ ██ It is next objected that the act of 1935 is unconstitutional because it contravenes article 6, section 7, of the State Constitution, in that it confers upon W. D. Lyon, a justice of the peace, which is an office of trust and profit, the additional office of county judge, and in requiring the incumbent of said office until the August election, 1936, should Lyon fail or refuse to serve as county judge, or in the event of a vacancy in said office, to be selected from the members of the county court. Under section 4 of article 7 of the Constitution, the filling of all vacancies not otherwise directed or provided for in the Constitution shall be made in such manner as the Legislature may direct. No special provision is made in the Constitution with regard to the filling of vacancies in the office of county judge; hence, the Legislature may make any provision for the filling of such vacancies as to it may seem expedient. *Richardson* v. *Young*, 122 Tenn., 471, 516, 125 S. W., 664. Vacancy in office of county judge may be filled in any manner prescribed by statute.

██ When Lyon was appointed and accepted the office of county judge he ceased to hold the office of justice of the peace. Should a vacancy occur in the office of county judge, whether or not the county court would be validly limited to the election of one of its members to the

office is a question not affecting appellant. A person having no interest in provisions of a statute cannot require the court to determine the constitutionality of such provisions. *Palmer* v. *Express Company*, 129 Tenn., 116, 118, 165 S. W., 236.

After a careful consideration of the questions presented for determination, we are of opinion that the decree of the chancellor must be affirmed. Appellant will pay the costs of the cause.