CARMICHAEL *v.* HAMBY.

(*Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

Rehearing denied March 11, 1949.

DUGGAN & WASHINGTON, of Athens, for plaintiff in error.

R. A. DAVIS and KENNETH D. HIGGINS, both of Athens, for defendant in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The "Statement of the Case" of the plaintiff in error fairly and succinctly states the case thus:

"This is a suit instituted by the Clerk of the Circuit and Criminal Courts and Court of General Sessions of McMinn County, Tennessee, under the Declaratory Judgments Act, seeking construction of Chapter 210 of the Private Acts of Tennessee for the year 1947. Under Chapter 210 of the Acts aforesaid, applicable only to McMinn County, a Court of General Sessions was created in and for said county and was given jurisdiction over all matters formerly coming within the jurisdiction of Justices of the Peace, who were by the Act divested of their judicial power and authority.

"By Section 14 of the Act, it was provided that the Clerk of the Circuit and Criminal Courts of McMinn County should act as the Clerk of the Court of General Sessions, and by said section it was further provided that the fees, commissions and emoluments of the Court of General Sessions shall accrue to McMinn County. It

was further provided that the Clerk of the Court of General Sessions shall receive as compensation for his services as such clerk the sum of $1200.00 per annum, in addition to the fees and compensation allowed him by law as Clerk of the Circuit and Criminal Courts, to be paid from the general funds of the County; but providing further that the total fees and compensation of the Clerk of the Court of General Sessions and the Clerk of the Circuit and Criminal Courts shall not exceed the sum of $5000.00 in any one year. McMinn County falls within the third class counties under Sections 10726 and 10727, Code of Tennessee, fixing the salaries of various offices, and under said sections said clerk's salary is fixed at $5000.00.

"The original petition charged that the above provisions of Section 14 were in direct conflict with Section 7 of the Act, which provides for the handling and disbursement of costs and fees of the Court and the disposition of fines and forfeitures; that Section 14, in so far as it allegedly deprives petitioner of fees and emoluments of said court, is in contravention of Article I, Section 8 of the Constitution of Tennessee, as depriving him of his property without due process of law, and of Article XI, Section 8 of the Constitution of Tennessee, in so far as it deprives him of said fees and fixes his compensation as above indicated, as contravening the general law for the benefit of McMinn County. It was further charged that under Section 7 of the Act and under Sections 10725 et seq., Code of Tennessee, petitioner was entitled to all fees and emoluments coming into his hands as Clerk of the Court of General Sessions. The charge was also made that the Act is broader than its caption, in that it allegedly seeks to decrease the compensation to which petitioner is entitled, there allegedly being no mention of

186

such provision in the caption. The petition prayed an injunction, which was granted prior to the filing of the petition, enjoining the collection from him of fees and emoluments of the Sessions Court.

"To the original petition, Frank Carmichael, Trustee of McMinn County, McMinn County, and the Attorney General of Tennessee, were made parties defendant. The Attorney General filed an answer appearing generally and disclaiming official interest in the outcome of the suit. The defendants, Frank Carmichael, Trustee of Mc-Minn County and McMinn County, demurred to the petition, questioning the correctness of the charges above set out. Subsequently an answer, reserving however, the right to rely on the demurrer previously filed, was filed on behalf of defendants Trustee and McMinn County.

"The cause was heard by the Court at Chambers, December 8, 1947, on the original petition and the demurrer of the defendants, was taken under advisement by the ·Court and continued by consent to the March, 1948 Term of the Court at which time the Court gave judgment overruling the demurrer and declaring Section 14 in conflict with Section 7 of the Act and Section 7 controlling in the premises; and declaring that under Section 7 of the Act and under Section 10725 et seq., Code of Tennessee, petitioner is entitled to all fees and emolumnts coming into his hands as Clerk of the Court of General Sessions; and declaring Section 14 in violation of Article I, Section 8 and Article XI, Section 8 of the Constitution of Tennessee.

 The caption of the act in question reads: "An Act to create a Court of General Sessions in and for McMinn County, Tennessee; to define its powers and jurisdiction; to provide for the appointment, election and qualifica-

tions of the Judge thereof; to define his powers and duties and to provide for his compensation; *to provide far a clerk thereof; to define his powers and duties and to provide for his compensation;* to deprive the Justices of Peace of jurisdiction to try civil and criminal cases; to confer jurisdiction on the court herein created.''

When we read this caption, and particularly the portion thereof that we have italicized, it is perfectly apparent that this caption is sufficiently broad to cover Section 14 of the Act, hereinafter quoted, which provide for a clerk and his compensation.

Section 14 of the Act is:

''Be it further enacted, That the Clerk of the Circuit and Criminal Courts of said County shall act as Clerk of the Court of General Sessions, and shall be designated 'Clerk of the Court of General Sessions of McMinn County.' The fees, commissions and emoluments of said Court of General Sessions shall accrue to said County. The Clerk of said Court shall receive as compensation the sum of Twelve Hundred Dollars ($1,200.00) per annum, payable in equal monthly installments, on the first of each month, out of the general funds of said County, which shall be in addition to the fees and compensation now allowed by law, and shall pay to said County monthly all fees, commissions and emoluments. However, the total fees and Compensation of the Clerk of the Court of General Sessions and the Clerk of the Circuit and Criminal Courts shall not exceed the sum of Five Thousand Dollars ($5,000.00) in any one year.

''The Clerk of said Court and his Deputies shall have concurrent authority with the Judge to issue warrants, writs and other process, except those required by law to be issued only by a judicial officer.''

■ Does this section of a private act applying to Mc-Minn County alone attempt to fix the compensation of the clerk in a manner and amount different from that prescribed by the Anti-Fee Bill, Code sec. 10725?

The Anti-Fee Bill, Code, sec. 10725 et seq., is the general law of the State. By the Anti-Fee Bill. "The legislators, in the exercise of their governmental power, transferred the fees of all county officers to the county treasury, and substituted as compensation a maximum salary, determined by the population standard, commensurate with the responsibility and service, providing that the salary should be derived from fees paid into the office, and should not exceed in any event the aggregate earned by the office." *Hunter v. Conner,* 152 Tenn. 258, 272, 277 S. W. 71, 75.

By the section of the private act in question, above quoted, the clerk is given a fixed compensation for acting as "Clerk of the Court of General Sessions of Mc-Minn County". "In addition to the fees and compensation now allowed by law" with the maximum fixed for his services in all courts of which he is clerk not to exceed $5,000. This in effect "violated section 8 of Article XI of the Constitution in that it conferred special benefits on an individual" (*Somerville v. McCormick,* 182 Tenn. 489, 187 S. W. (2d) 785, 788) not enjoyed by others in "like situation and circumstances", contrary to the general law. *Stratton Claimants v. Morris Claimants,* 89 Tenn. 497, 15 S. W. 87, 92, 12 L. R. A. 70.

It is conceded that this Court has properly struck down many "private acts seeking to give special benefits and fixed compensation to officers in single counties of the third or smallest class as defined in the Anti-Fee Bill . . . ". *Somerville v. McCormick, supra.* The reasons for so holding have frequently been stated. The

various cases are cited and the reasons therefor ably stated by Mr. Justice GAILOR in the *Somerville Case supra*. Those cases differ from the instant case in that (1) here we have the recipient of the fixed salary questioning the act by which it was fixed while in the cases referred to the county or some one representing the county questioned the act, and (2) inferentially, the fixing of compensation in the instant case takes away from the official who questions the act fees that would otherwise go toward adding up to an amount sufficient for him to earn his salary as fixed by the Anti-Fee Bill. That is to say in one case funds are taken from the general funds of the county to make a maximum salary while in the other fees are taken from the official which normally would go to make his salary as allowed by general law. It seems to us that the same reasoning applies in either instance.

In the instant case the official is deprived of legal, legitimate fees that go toward making his salary as allowed by the general law. In this he is set apart from other like officials of the State generally. It seems fair to reason that this official might not earn sufficient fees to bring his salary up to the fixed amount in this act in which case the section of the act questioned would clearly be unconstitutional under the authorities above referred to. There is nothing in this record to show that the fees of this official are not as great or greater than such fees in the offices of like officials in counties of the State coming within his classification. There is no apparent reasonable reason why this official should be set apart from other like officials. By the act under attack, this official is given a fixed salary The act applies to only one county. The provisions of the section of the act under attack are contrary to the general law. This por-

tion of the act under attack is therefore violative of Section 8 of Articles I and XI, respectively, of our Constitution, in that it suspends the general law of the State for the benefit of McMinn County.

Under Section 21 of the act under attack it is declared "that each section, subsection, paragraph and provision of this Act is severable" and that should any portion be held unconstitutional such a holding "shall not affect the remainder of this Act, but such unconstitutional or invalid portion shall be elided . . . ." The portion of Section 14 of the act under attack fixing the compensation of this official will and must be elided.

For the reasons above the judgment below is affimed with costs.

### On Petition to Rehear.

A petition to rehear has been filed herein, in which it is alleged that these petitioners "are much aggrieved by the opinion announced in the cause on December 11, 1948, insofar as said opinion fails to provide that the cause be remanded to the trial court for further proceedings." The burden of this petition to rehear is that we should remand the cause to the Circuit Court where proof may be had, and a determination made, on the answer filed a few days after the demurrer was filed. In the answer it is alleged "that the petitioner is estopped to claim any sum whatsoever in excess of $1200.00 dollars per year in view of the fact that he agreed to and urged the passing of Chapter 210 of the Private Acts of the Legislature for the year 1947, and that prior to the passage of said Act, the petitioner consulted with numerous citizens interested in the establishment of a Court of General Sessions, during which consultation the plaintiff agreed to

accept the sum of $1200.00 dollars per year in full payment of his services as Clerk of said Court.''

In the argument before us originally made and in the briefs therein filed no such question as is now made was ever mentioned. On examination of the record, we find that arguments were had below on the demurrer, the trial judge was furnished with briefs by both sides, and after a considerable length of time, the demurrer of these petitioners was overruled. At the time this demurrer was overruled these petitioners excepted to the Court's action and prayed an appeal to this Court, where argument was heard and the opinion rendered on December 11, 1948, now asked to be reheard in the particular above mentioned.

We, of course, assumed in view of the assignments originally made and the arguments heard, as above indicated, that a disposition of the demurrer was a final disposition of the cause.

 '' It is a well-settled rule, save where changed by statute, that questions arising in a course of legal proceedings cannot be reviewed in an appellate court until a final decision in the cause has been rendered below. (Citing authorities.) This rule was designed to avoid the delay and confusion arising from multiplied and successive appeals from interlocutory decisions on matters arising in the progress of the cause before final judgment.'' *Payne* v. *Satterfield*, 114 Tenn. 58, 60, 84 S. W. 800.

 Knowing this well settled established rule, and in view of the manner in which the case was presented to us originally, we did not nor do not consider whether or not this was an equity case or whether or not it was a case in which the trial court might grant a discretionary appeal. It is not necessary now for us to decide wheth-

er or not the trial judge might have granted such an appeal. See *Bruce* v. *Anz,* 173 Tenn. 50, 114 S. W. (2d) 789, and *Houser* v. *Haven,* Adm., 187 Tenn., 583, 216 S. W. (2d) 320, decided at Knoxville on December 11, 1948. This being a suit at law, it would seem a fair and reasonable presumption to conclude that the petitioners here rested their rights upon the validity of the statute attacked by the Clerk and perfected their appeal without attempting to develop the defense which they now seek to develop. They having lost out on this proposition should not now be permitted to try to develop a defense which was available to them prior to the perfection of the appeal. This would be giving them two bites at the cherry. They could come here on the overruling of a demurrer and have this Court act on that and then go back to the court and take proof and come up on the fact question through the Court of Appeals to this Court again.

■ It seems to us, that in view of the quoted portion of the answer upon which it is now asked to remand this case for proof, that under the allegations of the answer, above quoted, the parties bring themselves within the rule that a public officer cannot make a valid agreement, as is claimed herein, because to do so would be against public policy.

The exceptions or distinctions of when an officer may be estopped to raise this question are clearly pointed out in *Moore* v. *White,* 174 Tenn. 32, 122 S. W. (2d) 451, 452, wherein the Court quoting from *Saylor* v. *Trotter,* 148 Tenn. 359, at page 373, 255 S. W. 590 said:

"In these cases candidates promised to remit all or part of the salaries to which they were entitled by law, if elected. Such agreements were held to be against sound policy, as a sort of bribery of the public by candidates for office—in a purchase of office by promises of

money or services or both. Practices like these tend toward the selection of the lowest bidder among the candidates regardless of his merit.'' The above quotation follows a list of cases that hold, an estoppel is not applicable.

At the time this Act was passed, Hamby was the Circuit Court Clerk and as such was entitled to the minimum salary of $5,000 dollars per year for his services, and under the law, he could not agree with anyone to serve for less. If he had agreed with anyone that his minimum salary, as above indicated, might be less or that he would take only so much per year for acting as Clerk of the General Sessions Court then such agreement would unquestionably have been void.

''The obligation to pay county officers is not a contractual obligation of the county, but is attached to the office by law. 'It is uniformly held that the public enters into no agreement with officers that they shall receive any specific compensation during the term.' *Hunter* v. *Conner,* 152 Tenn. 258, 273, 274, 277 S. W. 71, 75. Accordingly no estoppel can be predicated on the theory that the county contracted with complainant to pay the salary fixed in the statute for services performed.'' *Roberts* v. *Roane County,* 160 Tenn. 109, 122, 23 S. W. (2d) 239, 243. The complaint now made is one that can very logically and reasonably be made when Hamby comes up for election by the electorate. It is not one that meets with a reasonable legal block.

For the reasons above expressed the petition to rehear must be denied.

All concur.