J. MURFREE O'BRIEN *v.* RUTHERFORD COUNTY, Honorable
Shelton Edwards, County Judge, *et al.*

(*Nashville,* December Term, 1955.)

Opinion filed March 9, 1956.

JESSE W. HUGGINS, II, of Murfreesboro, and LEWIS S. POPE, of Nashville, for appellants.

EWING SMITH, of Murfreesboro, for appellee.

644

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Mr. O'Brien was Circuit Court Clerk of Rutherford County continuously from September, 1930 until August 31, 1954. By virtue of his office as Circuit Court Clerk he performed the duties of clerk of the General Sessions Court of Rutherford County from the date of its creation by Chapter 384 of the Private Acts of 1947. This Act required him to do so. Section 15 of that Act, as amended, Private Acts 1947, c. 737, directed that the county pay him out of its general funds a salary of $1,300 per annum for this service, and that he pay to the county all fees collected in the General Sessions Court. The total compensation received by O'Brien during his entire tenure of office was substantially less than the salary allowed out of fees collected unless he may apply to this deficit fees collected in the General Sessions Court. These fees were much more than double such deficit.

Under the circumstances stated, O'Brien filed this bill wherein the relief sought was a decree (1) declaring Section 15 of the 1947 Rutherford County Act unconstitutional, and that it be elided, and (2) then adjudging him entitled to have this deficit paid out of the fees collected in the General Sessions Court. From the decree of the Chancellor granting the relief prayed Rutherford County has appealed.

It is properly conceded by the county that (1) all fees

collected by the clerk at any time during his tenure of office allocated to the payment of his statutory salary may be applied to the payment of any deficit in such salary during any previous or subsequent year or years or terms of his tenure, *Anderson* v. *Maury County,* 193 Tenn. 62, 68-69, 242 S. W. (2d) 81; (2) a provision in a Private Act which purports to deprive a Circuit Court Clerk of the fees collected by him in the performance of his statutory duty as clerk of a General Sessions Court is a provision which violates Article 11, Section 8 of our Constitution, *Carmichael* v. *Hamby,* 188 Tenn. 182, 217 S. W. (2d) 934; *Anderson* v. *Maury County,* supra; *Gregory* v. *Trousdale County,* 194 Tenn. 670, 254 S. W. (2d) 753; (3) this provision may properly be elided from the 1947 Rutherford County Act at the instance of one who is not estopped from attacking its constitutionality.

Rutherford County insists, however, that the dealings between it and O'Brien and his conduct within the premises were such as to equitably estop him from questioning the constitutionality of this provision of the 1947 Act.

The 1947 statute creating the General Sessions Court for Rutherford County, as originally enacted, fixed the compensation of the Circuit Court Clerk for performing the duties of Clerk of the General Sessions Court at $1,000. O'Brien thought that compensation should be $1,500 per annum and requested such an amendment. Pursuant thereto it was increased to $1,300 per annum.

Commencing in April, 1947, the effective date of the statute, and continuing to the end of O'Brien's tenure of office in August, 1954, a warrant was drawn each month against the general funds of the county for $108.30 payable to O'Brien for his services as clerk of the General Sessions Court. He accepted these warrants. The total amount so received is credited in the final decree herein

against the maximum salary which he is entitled to receive under the statute.

Commencing with the beginning of his services as clerk of the General Sessions Court in April of 1947, and continuing through July of 1951, O'Brien paid to the county each month all fees collected by him as clerk of the General Sessions Court. Commencing apparently in July of 1951 to the end of his tenure of office in August, 1954 he retained in what may be termed a special account all such fees.

O'Brien was re-elected clerk of the Circuit Court in September of 1950. He was a candidate in the primary held in the spring of 1954 for the selection of a nominee by his party as its candidate in the election for the term commencing September 1, 1954. He was defeated. Thereafter on June 15, 1954, he filed this bill. As a candidate for the terms commencing in September of 1950 and 1954, respectively, he made no representations as to whether he would or would not attack the constitutionality of Section 15 of the 1947 Act.

Rutherford County insists that the facts stated subject O'Brien to the application of the rule which declares that parties may so conduct themselves, or deal with each other, upon the faith of an unconstitutional statute that " 'neither may invoke the aid of the courts to undo what they themselves have done.' " *State, for Use and Benefit of Lawrence County* v. *Hobbs,* 194 Tenn. 323, 333, 250 S. W. (2d) 549, 553.

On the other hand, estoppels are not favored because they "may exclude the truth, and no one should be deprived of setting up the truth unless it is in direct contradiction of his previous conduct and he has thereby induced another to act to his prejudice." *Rogers* v. *Colville,* 145 Tenn. 650, 661, 238 S. W. 80, 83. The truth in

this case is that Section 15 of the 1947 provision does not, per se, ultimately deprive O'Brien of his right to apply the fees collected by him in the General Sessions Court to the payment of the salary which the general law allows to all the Circuit Court Clerks of the State. This is because " 'an unconstitutional statute is not a law, does not of itself confer any rights, duties, or obligations, and is "in legal contemplation, as inoperative as though it had never been passed." ' " *State, for Use and Benefit of Lawrence County* v. *Hobbs,* supra, 194 Tenn. 333, 250 S. W. (2d) 553. It is, however, the duty of the county to interpose the defense of estoppel if there is a reasonable likelihood that it applies and thus have the security of a judicial determination thereof.

Such being the truth in this case, the question is whether the facts stated require the Court to hold that those facts amount to such conduct upon the part of O'Brien and to such dealings with Rutherford County as to estop him from invoking the aid of truth.

██ The fact that O'Brien complied with the terms of this unconstitutional provision from the time of its enactment until the filing of this suit to declare it unconstitutional does not, nothing else appearing, deprive him of the right to attack the constitutionality of this provision, and thereby have declared his rights to the fees in question. This is so because the rule is that: "By force of the presumption in favor of the constitutionality of statutes, the public and individuals are bound to observe a statute, though unconstitutional, until it is declared void by an authoritative tribunal." *Rust* v. *Newby,* 171 Tenn. 127, 130, 100 S. W. (2d) 989, 990.

The fact that the county was paying O'Brien each month in obedience to an unconstitutional statutory direction the salary therein provided has not prejudiced the

648

county. In so paying him it was only returning to O'Brien a part of that which in truth belonged to him and which he, in obedience to the mandate of this unconstitutional provision, had turned over to the county.

■ The latest decision of this Court on the question is directly contrary to the insistence that O'Brien is estopped by reason of the fact that he requested the author of the Rutherford County General Sessions Court Act of 1947 to so amend the act as to provide a salary of $1,500 rather than $1,000 already fixed in the Act, with the result that it was amended so as to increase that salary to $1,300 per annum. *Carmichael* v. *Hamby,* 188 Tenn. 182, 190, 192-193, 217 S. W. (2d) 934. Moreover, as we understand the stipulation between the parties hereto, he did not seek the passage of the Act. He simply urged an amendment as to the compensation which the Act said he should receive for the services which it required him to perform.

■ The final item of O'Brien's conduct which, in the county's opinion, estops him is that after this General Sessions Court Act of 1947 was enacted, O'Brien was again a candidate for office in 1950 and 1954, but made no reference to whether he would attack the constitutionality of this provision of the Act. The insistence is that such silence upon the part of O'Brien, after previously obeying the mandate of this provision, amounted to a representation that he would accept as final that provision. In support of that insistence the county relies upon the unreported case of *Webb* v. *Roberts,* Blount Equity, decided in 1935. Such reliance is certainly not without substantial justification. But for reasons now to be stated its holding is not applicable to the instant case, in this Court's opinion.

The unconstitutional private act of 1927 involved in

*Webb* v. *Roberts,* supra, provided that the salary of the trustee should be $3,000 per annum though the General Salary Law of 1921 fixed it at $5,000, and, in addition to the $3,000, he is allowed office expenses and "$1200.00 per annum for a deputy or assistant". After Webb was elected in August of 1932 he complied with the terms of this Act for that term and was re-elected in 1934 without having mentioned it as a fact that he did not intend to thereafter accept the provisions of this unconstitutional statute. The Court said that because of his silence the taxpayers had every reason to believe he would not attack the constitutionality of this statute. Hence, that he was estopped from so doing.

Just why *Webb* v. *Roberts* was not published does not appear. Apparently, it rested its conclusion upon *Saylor* v. *Trotter,* 148 Tenn. 359, 255 S. W. 590. But there is a very important difference between the two cases in that the candidate for sheriff in *Saylor* v. *Trotter,* expressly promised the electorate that if it would elect him he would comply with the County Officers 1921 Salary Law and would not question its validity. Due to the long struggle by the electorate to procure the 1921 statute, the Court felt it to be a fraud upon his part to come into equity seeking to violate that express promise.

Without regard to whether *Saylor* v. *Trotter,* supra, justifies the conclusion reached in *Webb* v. *Roberts,* supra, the principle declared by this latter case was not applied in *Gregory* v. *Trousdale County,* 193 Tenn. 57, 242 S. W. (2d) 80, and 194 Tenn. 670, 254 S. W. (2d) 753, though the pleadings called attention to the fact that Gregory served as County Court Clerk from September 1, 1938, continuously until September 1, 1950 after the passage of a General Sessions Statute in 1939 with a like provision as to the fees collected by the clerk in the General Ses-

sions Court, and though he received the salary provided by the private act.

Also, the case at bar differs from *Webb* v. *Roberts,* supra, in that (1) Webb "accepted the office in 1932 under the 1927 Act with knowledge of the General Salary Act of 1921", according to the opinion, and (2) was unconditionally bestowed an additional benefit thereunder by way of "an additional allowance for all office expenses and $1200.00 per annum for a deputy or assistant". But in the case at bar O'Brien did not accept the office of Circuit Court Clerk under the statute, the 15th section of which is unconstitutional. He accepted the office under the General Salary Law of 1921. Pub. Acts 1921, c. 101. Nor was O'Brien give any benefit by reason of the unconstitutional provision to which he was not otherwise entitled under the General Act.

Notwithstanding the cases and principles mentioned, Rutherford County insists, however, that other decisions of this Court, in addition to *Webb* v. *Roberts,* require the conclusion that O'Brien is estopped to question the validity of Section 15 of the 1947 Private Act. These decisions, it says, are *Collier* v. *Montgomery County,* 103 Tenn. 705, 54 S. W. 989; *Saylor* v. *Trotter,* hereinbefore mentioned, 148 Tenn. 359, 255 S. W. 590; *Roberts* v. *Roane County,* 160 Tenn. 109, 23 S. W. (2d) 239; *Caldwell* v. *Lyon,* 168 Tenn. 607, 80 S. W. (2d) 80, 100 A. L. R. 1152; and *State, for Use and Benefit of Lawrence County* v. *Hobbs,* supra, hereinbefore mentioned, 194 Tenn. 323, 250 S. W. (2d) 549. It is true that each of these opinions, with the exception perhaps of *Caldwell* v. *Lyon,* contain statements which taken alone support Rutherford County's insistence, but the facts which control the conclusion in each case are different from the controlling facts of the case at bar. Otherwise, they cannot be recon-

ciled with the opinions of this Court allowing the application of fees collected in the General Sessions Court to the payment of this official's salary under the facts of this case.

*Caldwell* v. *Lyon* held only that complainant was not entitled as a hold-over to the office, as sought by his bill, because he had vacated it in accepting another office. So, it is not in point here.

In *Roberts* v. *Roane County* and *State, for Use and Benefit of Lawrence County* v. *Hobbs* salaries were paid over a period of years to an office holder under the terms of an allegedly unconstitutional statute. The salary in each case was paid and received "in good faith, without collusion, and upon the faith of the statutory direction." [160 Tenn. 109, 23 S. W. (2d) 243.] In adjudging the county estopped to recover the salaries so paid, the Court commented at length, particularly in *Roberts* v. *Roane County,* as to the prejudice which would thereby result to these office holders by a requirement that they refund the salaries so paid and received by them in good faith, and long ago spent, perhaps.

No such prejudice will result to Rutherford County by allowing O'Brien to take that which is his. All of these excess fees with the exception of approximately one hundred and ninety odd dollars will come from fees collected in the General Sessions Court, but held in a special account pending the outcome of this case. As to this amount, the county parts with nothing to which it is either legally or equitably entitled. As to the other one hundred and ninety odd dollars, the decree adjudging it liable only results in the refund to O'Brien of that which is his. There can be no presumption that the county will suffer a hardship by being required to refund it.

In *Collier* v. *Montgomery County* and *Saylor* v. *Trotter,*

the individual who sought in each case to attack the constitutionality of the statute there involved and received benefits by reason of the Act which he would not have received except for the Act. Likewise, the element of bad faith was involved in *Saylor* v. *Trotter* by him who as complainant was seeking the aid of equity. That is not the situation here. O'Brien has received nothing to which he was not otherwise entitled by reason of his compliance with the Act until it was adjudged unconstitutional in accordance with his duty to so comply until then. *Rust* v. *Newby*, supra.

In conclusion, notwithstanding the plausible insistences properly made in behalf of the county, it must be recognized that Rutherford County has not been prejudiced by the official conduct of O'Brien. Fundamentally, therefore, in addition to that which has herein been said, there is no basis, as this Court sees it, for the application of the equitable estoppel rule in order to prevent O'Brien from obtaining that which is his. To hold otherwise, it seems to this Court, would be to ''stifle justice with her own robes.''

The decree of the Chancellor will be affirmed. Costs will be adjudged against Rutherford County.