Mrs. La Nelle D. NORMAN, Petitioner,

v.

The TENNESSEE STATE BOARD OF
CLAIMS, Respondent.

Supreme Court of Tennessee.

Dec. 15, 1975.

Rehearing Denied Feb. 2, 1976.

George R. Fleming, Marks & Fleming, Clarksville, for petitioner.

Robert B. Miller, Asst. Atty. Gen., Secretary, Board of Claims, Robert B. Littleton, Asst. Atty. Gen., James M. Balthrop, Atty., Board of Claims, Nashville, for respondent; David M. Pack, Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Justice.

This case involves an interpretation of a portion of the Tennessee Military Code of 1970, T.C.A. §§ 7–101 et seq. Also involved are some of the statutory provisions governing the Board of Claims, T.C.A. §§ 9–801 et seq.

Lieutenant Colonel Edward M. Norman, a member of the Tennessee National Guard, was killed in an automobile accident en route from his home to a scheduled military drill. He was survived by his widow, Mrs. La Nelle D. Norman, and two minor children. On behalf of these dependents, a claim was filed for statutory death benefits provided for members of the Tennessee National Guard, T.C.A. §§ 7–147, 9–808.

A board of military officers was duly convened, and they filed a report stating that the decedent met his death in line of duty. Their findings were approved and certified to the Tennessee Board of Claims by the State Adjutant General, as provided by T.C.A. § 7–147(3).

Upon recommendation of its staff attorney, the Board of Claims approved the claim and authorized payment to the family of decedent of the maximum benefits allowed by statute. As a condition precedent to the payment of the claim, however, the Board of Claims required that the petitioner execute in favor of the State of Tennessee a "Subrogation Agreement", providing for reimbursement to the State of part of the amounts paid by it to the family of decedent, in the event a recovery was made from an alleged negligent third party.

Denying the authority of the Board of Claims to impose this condition upon its payment of her claim, petitioner executed the subrogation agreement under protest. She then appealed to the Court of Appeals, assigning as error the action of the State Board in requiring her to sign a subrogation agreement. Such an appeal is authorized by T.C.A. § 7–147(4).

In the Court of Appeals, counsel for the Board of Claims challenged the constitutionality of the statutory subsection just cited, upon the ground that it constitutes invidious class legislation, since National Guardsmen and their dependents are the

only state employees or other claimants appearing before the Board of Claims for whom a statutory method of appeal is provided.

The Court of Appeals sustained the constitutional attack, held the appeal provisions of the Military Code of 1970 to be unconstitutional, and dismissed the appeal without discussion of the assignments of error made by the petitioner.

This Court granted certiorari. The issues here are the constitutionality of T.C.A. § 7–147(4) and the authority of the State Board of Claims to require the family of a guardsman to execute a subrogation agreement.

## I. THE CONSTITUTIONAL ISSUES

The attack made by the Board of Claims and sustained by the Court of Appeals on the constitutionality of T.C.A. § 7–147(4) was predicated on the provisions of Article 11, Section 8, of the state constitution. This section prohibits the enactment of statutes for the benefit of individuals inconsistent with the general state law, and the passage of laws granting to individuals or groups any rights, privileges, immunities or exemptions "other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

The Court of Appeals pointed out that the general statute governing decisions of the Board of Claims provides that the decision of the Board "upon any claim filed hereunder, shall be final." T.C.A. § 9–814.

This statute, enacted in 1945, has been held to deny judicial review on the merits of decisions of the Board of Claims in cases falling within its jurisdiction. In *Hill v. Beeler,* 199 Tenn. 325, 286 S.W.2d 868 (1956), it was held that the courts of general jurisdiction could not entertain an action for declaratory judgment to determine whether or not a particular set of facts fell within the jurisdiction of the Board of Claims. In the case of *Quinton v. Board of Claims,* 165 Tenn. 201, 54 S.W.2d 953 (1932), construing earlier statutes governing the

Board, it was held that the "statutory" writ of certiorari was not available to provide a de novo review of decisions of the Board of Claims in the circuit or chancery courts. (Williams Tenn.Code Ann., §§ 9008 et seq.; T.C.A. §§ 27–901 et seq.).

Contrary to the statement of the Court of Appeals in its opinion below, neither of these cases held, nor has any other case held, that actions of the State Board may not be reviewed under the "common law" writ of certiorari, T.C.A. §§ 27–801 et seq. Although the latter statutes provide only a very narrow review, based upon the record before an inferior tribunal, and only permit inquiry as to whether the action of an agency was arbitrary, illegal or beyond its jurisdiction, nevertheless the provisions thereof are quite broad. T.C.A. § 27–801 provides as follows:

"The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

We are not called upon in this case to decide whether decisions of the Board of Claims fall within the sweeping provisions of these statutes. On the surface at least, the Court perceives no reason why the decisions of the Board of Claims should be any more immune from limited judicial review under these statutes than the decisions of any other administrative agency of the State.

■ We recognize, of course, that in enacting the statutes governing the Board of Claims, the State, to the extent therein provided, modified its sovereign immunity. It subjected its treasury and assets to certain types of claims by its employees, to contract claims and to certain types of tort claims. We further recognize that the statutory provisions governing the Board of Claims have been strictly construed, in view

of the fact that they do represent an encroachment upon the sovereign immunity and upon the assets of the State. Nevertheless, although the statutes purport to make the decisions of the Board final, no reason appears to us why judicial review should not be available to determine whether the Board did or did not in fact act within its jurisdiction, or whether it acted illegally or arbitrarily, under the very narrow review available from the decisions of boards and agencies under the "common law" writ of certiorari.

We further note that in the case of *Daugherty v. S. & W. Construction Company, Inc.,* 196 Tenn. 357, 268 S.W.2d 94 (1954), a suit by taxpayers was sustained in the courts, successfully challenging the validity of a contract award made by the Board of Claims. Certain miscellaneous appropriations had been made by the General Assembly, subject to approval by the Board of Claims. In the case just cited, the Court held that a decision of the Board of Claims, construing a statute, was erroneous and subject to attack in the courts by taxpayers.

Accordingly, from our examination of the cases, decisions of the Board of Claims are not as completely immunized from judicial review as was indicated by the Court of Appeals in its opinion in the instant case. Certainly we agree that there are no general methods of judicial review on the merits provided by statute, but the Court of Appeals was in error in stating that this Court has in the past "held that the action of the Board is not even judicially reviewable by writ of certiorari." (Opinion, p. 4).

The Tennessee Military Code now under consideration was enacted as Chapter 596 of the Public Acts of 1970. It is a comprehensive statute governing the military department of the state and deals with numerous aspects of the state National Guard, its organization, use and purposes.

The portions of the Military Code here under consideration are contained in T.C.A. § 7–147. These provide for compensation to members of the National Guard, or their dependents, in case of injury or death. The statutes direct, and not merely permit, the Board of Claims to pay benefits to National Guardsmen, or their families, when injury or death occurs in line of duty. They provide that no benefits shall be paid unless a board of military officers, after a full evidentiary hearing, finds that the deceased or injured guardsman was in line of duty at the time of the incident out of which a claim arises. The results of the findings of the Military Board are to be certified to the Board of Claims by the Adjutant General. If the guardsman was found by the Military Board to have been in line of duty, the only function of the Board of Claims is to determine any issue of dependency and the actual amount of compensation.

Subsection 4 of T.C.A. § 7–147 provides for review in the Court of Appeals of the action of the Board of Claims by any aggrieved guardsman or his beneficiary. The statute calls for a de novo review, based upon the record before the Board of Claims, and provisions are made as to the time for filing the request for review.

It was the opinion of the Court of Appeals that these special provisions for appellate review of decisions of the Board of Claims are unconstitutional, constituting invidious class legislation, on the ground that there is no reasonable basis for permitting judicial review of these particular claims, when all other claimants appearing before the Board are denied a general or broad appeal to the courts.

It is recognized in the brief of counsel for the Board of Claims that the Military Department of the State represents a classification upon which special statutory provisions may be based. The state constitution, Article 1, Sections 24 and 25, speaks of a "well regulated militia" and provides that no persons in the state shall be subjected to martial or military law "except such as are employed in the army of the United States, or militia in actual service . . . ."

The Military Code of 1970, including the appeal provisions here under consideration,

is of general statewide application. National Guardsmen, of course, are subjected to special training, and they are subject to being called into service in various types of civil emergencies or natural disasters. There can be no question but that their status merits and affords a basis for special statutory classification, insofar as many aspects of their duties are concerned. They are afforded certain immunities from jury duty and service of process, not granted to the citizenry in general, and we do not believe that it could seriously be argued that these classifications are unreasonable.

■ While, of course, the General Assembly must have some reasonable basis for statutory classifications under the requirements of Article 11, Section 8, it enjoys great freedom and is afforded great liberality when dealing with remedies and procedures. Any survey of appellate procedure in this state will demonstrate that the General Assembly has provided many, varied and different procedures for the handling of different types of claims in the courts themselves. Under the provisions of T.C.A. § 16–408 the Legislature has provided for the handling of appellate review, in the first instance, of many types of civil cases in the Court of Appeals, while leaving other cases to be handled in this Court on direct appeal from the trial court. This statute, however, is by no means the only statute on the subject, and throughout the entire Code there are special provisions dealing with appeals in different kinds of cases. For example, in the recent Administrative Procedures Act, generally applicable to all State administrative agencies, provision is made for direct appeal to this Court from the trial court, even though many, if not most, of such cases would ordinarily fall within the general categories of T.C.A. § 16–408 and would be reviewed in the

Court of Appeals. See T.C.A. § 4–524. Similar provisions have been made for direct appeal to this Court in obscenity cases,[1] decisions of beer boards,[2] unemployment compensation cases,[3] teacher tenure cases,[4] licensing decisions of the welfare department,[5] and others too numerous to catalogue here.[6]

Ordinarily, the allowance of a special method of review has been sustained against constitutional attack if there exists any plausible or reasonable legislative purpose for its enactment. A leading case on this subject is *Kentucky-Tennessee Light & Power Company v. Dunlap*, 181 Tenn. 105, 178 S.W.2d 636 (1944). Under consideration in that case was a statute which is now codified as T.C.A. § 65–437, providing for review of certain types of decisions of the Public Service Commission. This statute provides for initial review in the trial courts, with an appeal to the Court of Appeals. It then provides:

> "and any appeal therefrom shall be perfected to the Supreme Court of Tennessee."

In the *Dunlap* case, *supra,* it was contended that the latter statute, providing for a broad appeal to the Supreme Court from the Court of Appeals, contravened the general statutes of the state, which have long provided that the only method of review of a decision of the Court of Appeals in the Supreme Court is by petition for writ of certiorari. T.C.A. §§ 27–819 et seq.

This Court sustained the statutory provisions against an attack of invidious class legislation, finding the classification not to be arbitrary or unreasonable. 181 Tenn. at 116, 178 S.W.2d 636.

In the case of *Chattanooga v. Keith,* 115 Tenn. 588, 589, 94 S.W. 62, 63 (1905) the Court sustained a clause in a city charter

---

1. T.C.A. § 39–3019.

2. T.C.A. § 57–209.

3. T.C.A. § 50–1325(I).

4. T.C.A. § 49–1417.

5. T.C.A. § 14–1412.

6. The scope of appellate review available also varies in many different categories and classes of actions. See, e. g., T.C.A. §§ 27–303, 306, 50–1018 and cases cited thereunder.

denying appeals in certain types of small claims. It said:

"So, the authorities held that where the Constitution does not define the specific limits of appellate jurisdiction, this may be abridged or extended by the Legislature as public policy may require . . . ."

In its opinion in the present case, the Court of Appeals relied heavily upon the unreported decision of this Court in the case of *Shelton v. Olgiati,* filed at Knoxville on November 16, 1954. There, a Private Act applicable only to the City of Chattanooga provided a special method of review of a local board of that city, contrary to the methods provided by the general law of the state. This Court held the statute unconstitutional. It contravened a general statute, which provided a different method of review for county or municipal employees under civil service. The Court found no reasonable basis for distinction in favor of the limited group of local employees.

We do not deem that case to be controlling here. As previously pointed out, the present statute applies to all National Guardsmen, or their dependents, in the entire state.

In the case of *City of Chattanooga v. Harris,* 223 Tenn. 51, 442 S.W.2d 602 (1969), this Court sustained a 1967 statute of statewide application, which provided special benefits for firemen and policemen, including requirements that local governments furnish counsel for the defense of damage suits brought against these persons and provide indemnification against judgments rendered in such cases.

The special hazards incident to these lines of employment, including unusual risks of liability, were noted, and the statutory provisions were deemed to represent a reasonable classification and to provide, in a sense,

"fringe benefits" for persons in these hazardous pursuits.

It is, of course, true that other categories or groups of state employees may incur special hazards, or may require special training, not unlike National Guardsmen. It has seldom been held a basis for invalidating a statute, however, that its classifications embrace too few persons, or in effect represent under-classification, so long as there is a reasonable basis for the classification itself.

█ We are of the opinion that the General Assembly acted within the scope of its very broad authority in enacting the special procedural provisions applicable to National Guardsmen, here under consideration, and that the statute is not unconstitutional as representing invidious class legislation.

Although the matter has not been argued by the petitioner, this Court also entertains serious doubt as to the standing of the State Board of Claims to raise the issue. It is difficult for us to perceive any possible prejudice to the Board of Claims, either collectively or individually, in the allowance of an appeal from some of its decisions to the Court of Appeals.

█ There is a fundamental principle of constitutional law to the effect that persons attacking legislation on the premise of discriminatory classification must generally be within the class prejudiced by the enactment, or must have some other particular or special interest in the legislation not common to the general public.[7] Generally, subordinate state officials or agencies are not free to question the constitutionality of acts of the General Assembly,[8] unless those officials are in some way personally affected thereby, such as suffering loss of compensation or incurring possible personal liability by reason of acting under the statutory

---

7. *Porter v. City of Paris,* 184 Tenn. 555, 559, 201 S.W.2d 688 (1947); *Motor Transportation Co. v. Carden,* 164 Tenn. 416, 423, 50 S.W.2d 230 (1932).

8. "Ministerial officers are not as a general rule permitted to question the validity of a statute or city ordinance." *Bricker v. Sims,* 195 Tenn. 361, 368, 259 S.W.2d 661, 664 (1953).

directive.[9] It is very difficult for us to see how an inferior tribunal or court could possibly be prejudiced because some claimants appearing before it are allowed an appeal and others are not, or because some may be allowed a broad review and others a narrow one. So long as the agency or tribunal involved follows the procedural steps outlined in a statute, and so long as no individual member may be subjected to personal liability for doing so, his standing to challenge the classifications contained in such a statute is, to say the least, highly uncertain.

This Court has applied the principle of standing in cases involving procedural statutes. In the case of *Kentucky-Tennessee Light and Power Company v. Dunlap*, 181 Tenn. 105, 178 S.W.2d 636 (1944), as previously pointed out, complaint was made because a broad appeal was allowed to the Supreme Court from the Court of Appeals, rather than the usual remedy provided by petition for certiorari. The utility company, which was seeking review of a rate-making order of the then Railroad & Public Utilities Commission, argued that this procedural statute constituted vicious and unconstitutional class legislation. This Court held that it did not, but it further stated:

"If, however, we should concede that the Legislature, has made an unreasonable classification, the constitutional objection cannot be invoked in the instant case because the obligations, immunities, and privileges of the act apply with equal force to both complainant and the defendant. In Volume 11 Am.Jur., Constitutional Law, Sec. 111, it is said: 'Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights.' We think the principle thus stated is applicable in the instant case and is supported not only by our own cases but by the great weight of authority. The complainant should not be heard to complain that an act is vicious class legislation where its benefits are equally available to it as they are to its adversary. As between the parties to this lawsuit, the law makes absolutely no distinction." 181 Tenn. at 116–117, 178 S.W.2d at 640.

Similarly, in the case of *Hancock v. Davidson County*, 171 Tenn. 420, 104 S.W.2d 824 (1937), a special statute of the Legislature creating a general sessions court for Davidson County was challenged. Among the grounds of attack was the complaint that cost bonds were handled differently under the Davidson County statute from the manner in which they were generally handled under state law, resulting in invidious class legislation under Section 8, Article 11, of the Constitution. Responding to this contention, the Court said:

"In answer to this objection, it is sufficient to say that so far as his bill discloses the appellant here is in nowise affected by these provisions of the act of 1937. He is not a litigant in any case before the court of general sessions. He sues as a taxpayer of Davidson County to avoid the additional burden of taxation that he avers will be imposed upon him by the maintenance by said county of this court. These provisions as to civil suits will impose no burden upon the county and will impose no burden upon any taxpayer of the county.

"To justify an assault upon the validity of a statute under these sections of the Constitution, the assailant must show that he is adversely affected by the alleged discrimination." 171 Tenn. at 433–434, 104 S.W.2d at 829.

■ As we have previously stated, the constitutional attack in this case is launched by the Board of Claims itself, through its counsel, upon the sole basis that some claimants appearing before it are afforded a different method of review from other claimants. We do not believe that the State Board has standing to assert any such proposition. It is created by the General

---

9. See *O'Brien v. Rutherford County,* 199 Tenn. 642, 288 S.W.2d 708 (1956).

Assembly, and it takes its direction from that body. No member of the Board of Claims will incur any personal liability or have his compensation affected by following the directive of T.C.A. § 7–147(4), nor are the members of the Board faced with conflicting statutory directives as to which they may need to seek the guidance of the courts.[10]

In our opinion the Court of Appeals was in error in holding the statutory provision just cited unconstitutional at the instance of the State Board, and upon the grounds alleged by the Board. Its decision in this regard is accordingly reversed.

## II. THE SUBROGATION AGREEMENT

Turning to the assignments of error made by the petitioner in the Court of Appeals and repeated here, to the effect that the State Board is without power to require a subrogation agreement in cases of this nature, we are of the opinion that the assignments of error are not well taken.

■ Under a general statute pertaining to the Board of Claims, which was apparently not repealed by the Military Code of 1970, members of the Tennessee "state guard" while on active duty or in training "shall be considered as employees of the state . . . ." T.C.A. § 9–808.

■ In the new Military Code, as previously pointed out, there are express provisions for the payment of benefits in case of death or injury to guardsmen in line of duty. With respect to death benefits, T.C.A. § 7–147(1)(b) provides:

"The death benefit so paid shall be the same as those as are now provided under the workmen's compensation laws of this state or as said law shall be hereinafter amended . . . ."

With respect to injuries not resulting in death, the Board of Claims is directed to compensate a guardsman

". . . in the same manner and to the same extent as now provided under the workmen's compensation law of this state, or as said law shall hereinafter be amended . . . ." T.C.A. § 7–147(2).

Other employees of the state government and its departments are also entitled to benefits measured by the provisions of the state workmen's compensation law, with certain exceptions not here pertinent. T.C.A. § 9–807.

It thus appears that the State is placed in the position of an employer of National Guardsmen and other State employees sustaining injury in line of duty, and, in effect, the State's workmen's compensation law and its benefits are made applicable to such personnel.

Any employer in the state operating under the Tennessee workmen's compensation law is, by statute, given a right of subrogation, to the extent of compensation benefits paid or payable, against any third-party claim or right of action held by the employee or his dependents. T.C.A. § 50–914.

These provisions were in the original workmen's compensation law enacted in 1919. Prior to 1949, however, an employee was required to elect between a third-party claim or workmen's compensation benefits; he could not pursue both remedies. *Wilson v. Chattanooga,* 179 Tenn. 234, 165 S.W.2d 373 (1942); *Keen v. Allison,* 166 Tenn. 218, 60 S.W.2d 158 (1933).

Since a basic amendment contained in Chapter 277 of the Public Acts of 1949, the employee has been entitled to receive compensation and still pursue his remedy against a third party, subject to the right of subrogation as aforesaid. The details of the right of subrogation, including such matters as counsel fees for the employer and the employee, have been spelled out in some detail in the statute by amendments subsequent to 1949. T.C.A. § 50–914, containing the right of subrogation, has remained in its present form since 1963, without further amendment.

10. See *Cummings v. Beeler,* 189 Tenn. 151, 223 S.W.2d 913 (1949).

In addition to the statutory right of subrogation this Court has held that an employer or its insurer who pays medical or other benefits to or for an injured employee in excess of those required by the Workmen's Compensation Act is entitled to recover those excess benefits, by way of subrogation, from a third-party tortfeasor. *U.S.F. & G. Co. v. Elam,* 198 Tenn. 194, 278 S.W.2d 693 (1955). The Court has also permitted the doctrine of equitable subrogation to be applied generally when one person discharges the debt or obligation of another. *Castleman Constr. Co. v. Pennington,* 222 Tenn. 82, 432 S.W.2d 669 (1968).

The State Board of Claims has adopted its Rule 13A, to the effect that no disbursements will be made to a State employee by the Board of Claims until a subrogation agreement has been executed by him, providing that the State will be reimbursed "to the extent of one-third of any sum he may receive from such third party, but only to the full amount expended if it should be less than one-third of the recovery." The rule further provides that no part of the recovery due the State shall be diminished by any collection fees "or for any reason whatsoever."

This rule is not strictly in accord with the provisions of T.C.A. § 50–914, governing workmen's compensation proceedings generally. The subrogation or reimbursement rights of the employer are not limited to any particular percentage of the third-party recovery under the general statute, and there are provisions for diminishing the amount of the award to the employer by reasonable counsel fees. Nevertheless, the rule of the Board of Claims, on the whole, is far less stringent, insofar as the employee is concerned, than the general statute, and falls well within the confines and limits of T.C.A. § 50–914.

On behalf of the petitioner it is contended, with considerable force and logic, that the meaning and purpose of the statutes governing the Board of Claims, and those of the Military Code under consideration here, are simply that the benefit schedules contained in the workmen's compensation law of the state shall be used to measure an award made to an injured or deceased employee. It is insisted that the subrogation features of the state workmen's compensation law are not incorporated by reference either into the general statutes governing the Board of Claims or into the Military Code, and that the State Board has exceeded its authority in so interpreting these statutes and in requiring a subrogation agreement such as that involved here.

This, at best, is a matter of judgment and of the interpretation of the statutes. Rule 13a has been in force for a considerable period of time, and represents a reasonable interpretation of the statutes by the Board of Claims. The subrogation right and its accompanying statutory lien in favor of an employer have been integral parts of the Tennessee workmen's compensation system since 1919. All workmen's compensation awards in the state are governed by and are subject to the rights of the employer, when third-party claims are involved.

Since the State of Tennessee is placed in the role of an employer as to claimants such as those involved here, and since awards to state employees are governed by the terms and provisions of the Workmen's Compensation Act, we do not consider that the conclusion reached by the State Board in the present case is an unreasonable one, to the effect that the State is entitled, as any other employer, to be subrogated when a third-party is or may be liable to the injured employee.

Accordingly we are of the opinion that the State Board has made an interpretation and construction of both the general statutes governing that Board and of the Military Code which is a reasonable one. If the Legislature has had in the past any contrary intention, it has not so indicated. If the interpretation made by the Board is not that intended by the Legislature, the latter body is, of course, free at any time to amend the statutes in question so as to

delete the subrogation requirements imposed by the Board.

It results that the judgment of the Board of Claims is affirmed, and the cause is remanded to that Board for such further proceedings as may be appropriate. All costs incident to the appeal are taxed to the Board of Claims.

FONES, C. J., and COOPER and BROCK, JJ., concur.

HENRY, J., not participating.

### ORDER

HARBISON, Justice.

A careful and thoughtful petition for rehearing has been filed on behalf of the petitioner, addressed to that portion of the opinion of the Court dealing with the subrogation agreement. After consideration of the petition for rehearing, we are of the opinion that the arguments advanced were dealt with in the original opinion and we adhere to the conclusion stated therein.

The petition for rehearing is respectfully overruled.

FONES, C. J., and COOPER and BROCK, JJ., concur.

HENRY, J., not participating.