**PURCELL ENTERPRISES, INC., Plaintiff-Appellant-Appellee,**

**v.**

**STATE of Tennessee and Tennessee State Board of Claims, Defendants-Appellants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Aug. 25, 1981.

Permission to Appeal Denied by Supreme Court April 12, 1982.

John W. Nolan, III and Earl J. Porter, Jr., Nashville, Tenn., for plaintiff-appellant-appellee.

Donald W. Schwendimann, William C. Koch, Jr., Donald L. Corlew and Henry E. Hildebrand, III, Asst. Attys. Gen., Nashville, Tenn., for defendants-appellants-appellees.

Hugh T. Shelton, Jr., Columbia, Tenn., for third-party defendant.

OPINION

CONNER, Judge.

This case involves the application of legal principles of res judicata, election of remedies and judicial estoppel to pursuit of a claim against the state, administratively by contract, administratively by statute and concurrently in the court system.

A brief grasp of the complexity of the matter can be gathered from a realization that the relevant proceedings have spanned five years and several hundred pages of transcript. The dispute has been before the State Building Commission, the State Board of Claims, the Davidson County Chancery Court three times, this court twice previously and the Supreme Court of Tennessee once. In each of the three non-appellate court forums in which the claimant has sought relief against the state a different amount has been awarded to it.

THE FACTUAL BACKGROUND OF THE DISPUTE

Plaintiff-appellant, Purcell Enterprises, Inc.,[1] and the State of Tennessee entered into a contract on May 20, 1975, for site preparation and the construction of a National Guard armory in Columbia. The contract price was $913,972.00. The removal of rock, if encountered, was covered by unit price. Purcell had placed a high unit price in its bid which was accepted by the state because it was not anticipated that large amounts of rock would be encountered. As a general proposition in the construction industry the greater the amount of rock to be removed in site preparation the less the unit price to be charged therefor.

Less than one month later, a pre-construction conference was held. At that time, Jack Ham, vice president of the plaintiff's building division, received a document which dealt with the proper procedures for obtaining change orders. It provided:

> All change orders must be approved by the state and national guard bureau prior to starting work on all change orders. All proposed change orders must reflect the total price or increase or decrease of completion dates.

That same day Captain Billy G. Weatherford, the state armory maintenance officer, instructed Purcell that for any work covered by a unit price, he did not want a change order submitted until the work was completed.

Shortly after construction began, plaintiff's workmen encountered large quantities of rock at the building site. The state's architect, Adrian Scovil, was notified of the unexpected rock formations. A surveyor was sent to cross-section the site. Thereafter, on July 17, 1975, Scovil sent Purcell a letter revising grades to reduce the amount of rock that would have to be excavated. On September 8, 1975, Scovil sent another letter to the plaintiff suggesting an equitable adjustment in the contract by reducing the unit prices for rock excavation. This

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

was the first notice to the contractor that the state sought or intended to change the original unit prices called for in the contract. However, Purcell had already removed approximately 90% of the rock without submission of a change order pursuant to Captain Weatherford's instructions. Subsequently, on January 9, 1976, the plaintiff requested a change order for the amount of rock that had been previously excavated in accordance with the original unit prices for rock removal. The amount of that change order, pursuant to the original contract terms, was $392,198.00.

The state refused to pay the invoiced amount. In May, 1976, Major General Carl D. Wallace, contracting officer for the state, wrote Purcell that the amount due it according to the state architect's equitable adjustment formula for the rock removal was $85,446.25. Purcell refused to accept this amount and began to travel a long and circuitous road seeking administrative and judicial relief.

THE PROCEDURAL BACKGROUND

After the dispute arose over what was owed for rock removal, Purcell initially sought to appeal to the Governor, as contemplated under the disputes provisions of the contract documents. The Governor refused, but attempted to designate the building commission as his representative to hear the dispute. The building commission refused that designation but agreed to hear the matter as a request for a change order. After hearing several days of proof beginning in October, 1976, the building commission approved a change order amounting to $84,846.25 and caused that additional amount to be paid to Purcell.

Purcell filed its first suit in Davidson County Chancery Court on January 24, 1977, seeking review of the action of the building commission as a contested case under the Administrative Procedures Act, T.C.A. § 4–5–101, et seq. The chancellor dismissed the petition on the ground that the proceeding before the building commission was not a contested case, and that decision was affirmed by this court in an opinion rendered by Judge Todd and filed on June 30, 1978. The supreme court denied certiorari on November 20, 1978. In the meantime, on November 22, 1976, Purcell filed a petition before the board of claims pursuant to T.C.A. § 9–8–207, et seq. seeking the same relief previously sought before the building commission.

While Purcell's claim was pending before the board of claims, and its "first" appeal was pending before this court, but before adjudication, T.C.A. § 29–10–101 (formerly T.C.A. § 23–3601) [2] was enacted into law effective May 16, 1977. That statute granted to the Circuit and Chancery Courts of Davidson County, jurisdiction to entertain suits and enter judgment against the state in disputes arising out of contract.

On November 30, 1977, plaintiff filed its "second" Davidson County Chancery Court action pursuant to this recently passed legislation, *seeking the same relief requested before the building commission and the board of claims. Upon filing this suit Purcell did not withdraw its appeal in the building commission matter, nor did it abandon or stay its action before the board of claims.*

On December 29, 1977, the state objecting strenuously to having to defend on so many

2. *Jurisdiction.*—The several circuit and chancery courts of Davidson County, Tennessee, shall, subject to appeal as provided by law, have original jurisdiction to enter judgments against the state founded upon any express or implied contract or breach thereof with the state and shall determine all questions of fact involved without the intervention of a jury; provided, that no action shall be maintained based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of this state.

A decision, ruling or other determination by one or more officials, officers, employees, representatives or appointees of the state, shall not be dispositive, final or presumptively correct, regardless of any language in the contract or elsewhere to the contrary.

The jurisdiction herein conferred upon the circuit and chancery courts of Davidson County, Tennessee, includes any setoff, claim, or demand whatever on the part of the state against any plaintiff commencing an action under this chapter. T.C.A. § 23–3601 (Supp. 1977).

fronts, seasonably filed a motion to dismiss the "second" chancery court action on several grounds. Two of those involved the pendency of the board of claims and court of appeals actions. On February 15, 1978, the chancellor denied the motion to dismiss, but stayed the T.C.A. § 29–10–101 contract action pending "termination of the actions of the Court of Appeals and the Board of Claims."

Thereafter the record made before the building commission was introduced as proof before the board of claims. The evidence was summarized by the assistant attorney general representing the board and submitted to the board for consideration. At its meeting on April 14, 1978, the board voted to award Purcell an additional $100,000.00, after motions to award different amounts failed for lack of a second, or lack of a majority.

Subsequent to the award of the board of claims, but prior to any disposition of the T.C.A. § 29–10–101 contract action, on April 21, 1978, plaintiff went back into chancery court on yet a third approach. It next sought a review of the action of the board of claims by certiorari pursuant to T.C.A. § 27–801 (now T.C.A. § 27–8–101) or T.C.A. § 27–901 (now T.C.A. § 27–9–101). On April 28, 1978, the chancellor entertained the petition pursuant to the authority of *Norman v. Tennessee State Board of Claims*, 533 S.W.2d 719 (Tenn. 1975) and thereafter continued the stay of the T.C.A. § 29–10–101 theory pending a review by certiorari of the board of claims action.

On September 11, 1979, the chancellor upheld the decision of the board of claims. He found that the action of the board was not arbitrary or capricious. Thus, pursuant to the mandate of *Norman, supra,* it must be sustained. Thereafter, the state, continuing to complain of Purcell's multi-forum attack, filed a motion to dismiss the T.C.A. § 29–10–101 claim on the basis that the board of claims' decision, now reviewed by the chancellor, was res judicata with respect to additional litigation and constituted a binding election of remedies on the part of the plaintiff.

On December 27, 1979, the chancellor entered an order denying the state's motion to dismiss the T.C.A. § 29–10–101 complaint and on February 1, 1980, denied the state's request for an appeal of that order by permission.

The state then filed an application for an extra-ordinary appeal with this court, which was denied on February 29, 1980, two days after the actual trial of the T.C.A. § 29–10–101 claim had commenced.

On June 18, 1980, a decree was entered in chancery court awarding Purcell a judgment on its breach of contract action pursuant to T.C.A. § 29–10–101 against the state in the amount of $400,278.00. This included $7,000.00 in retainage pursuant to the contract sought first by plaintiff in a post-trial application. Credited to the state against the judgment was $51,057.00 under counterclaim by it for breach of contract by Purcell and the $84,846.25 previously paid under the building commission award. This left a net amount due to plaintiff thereunder of $264,374.75. Both parties have appealed.

## THE DILEMMA OF THE COURT AND THE SCOPE OF REVIEW OF BOARD OF CLAIMS DECISIONS

In this most complicated case we are faced with a dilemma. We have only touched upon the exhaustive proof in these various proceedings because our ruling makes detailed discussion thereof unnecessary. However, we are satisfied that as a matter of contract, Purcell was indeed entitled to be paid the original unit price agreed amount for the rock excavation on the subject project. Granted that the profit on the work is enormous. Granted that it would surely amount to a windfall for Purcell. Nonetheless, contracting is a risk business. On some jobs contractors are able to make large profits. On others their losses are of the same magnitude. In those latter instances they are bound by contracts which inure to the benefit of owners just as we believe the state as the owner was bound by the express terms of a contract which in this case inured to the benefit of the con-

tractor. The authority of Captain Weatherford is not subject to reasonable question. The presumption of correctness of the findings of fact of the trial court provided by T.R.A.P. 13(d) would be sufficient to protect the plaintiff's judgment if there were no other issues raised.

However, even though Purcell would be entitled to the money as a matter of contract, we are unable to allow its recovery and that is our dilemma. The reason we are unable to allow that recovery is to do so would, in our opinion, do irreparable damage to the doctrines of res judicata and election of remedies. In the instant case the plaintiff went before the building commission first seeking payment. When it did not obtain satisfaction in that forum, Purcell sought review of the building commission determination in the chancery court and in this court on the theory that court review of the decisions of the building commission was available. That theory failed. *See Purcell v. State of Tennessee*, (Tenn. App.M.S., filed at Nashville, June 30, 1978). In fact, Judge Todd in that opinion was a soothsayer of things to come when he noted:

> This Court is assured that plaintiff will ultimately have his rights determined by a tribunal of competent jurisdiction *either the State Board of Claims, or the Chancery Court in the suit now pending* under Public Chapter 281, Acts of 1977; and the disposition of this appeal is without prejudice to the rights of plaintiff to pursue other remedies. (Emphasis supplied.)

Next, Purcell pursued the matter before the board of claims which was permissible under existing law, T.C.A. § 9–8–207, et seq. The board of claims awarded Purcell the sum of only $100,000.00 in addition to the amount awarded by the building commission when as a matter of contract we believe, as did the lower court, that Purcell was entitled to an award of at least $400,278.00, less the amount awarded on the state's cross-action and the amount already paid as a result of the building commission change order claim. However, the chancery court later held that there was no showing that the action of the board of claims was arbitrary, capricious or without jurisdiction. We concur.

The contract documents contained an "equitable adjustment clause." It provided:

> If unit prices are stated in the Contract Documents or subsequently agreed upon, and if the quantities originally contemplated are so changed in a proposed Change Order that application of the agreed unit price to the quantities of Work proposed will create a hardship on the Owner or the Contractor, the applicable unit prices shall be equitably adjusted to prevent such hardship.

There was substantial evidence in the record before the board of claims to the effect that the quantities of rock actually encountered on the project were so different from those originally contemplated as to create a hardship on the state as the owner, thus requiring an equitable adjustment of the unit prices.

However, when hearing the T.C.A. § 29–10–101 action, the chancellor ultimately found that there was insufficient proof to establish the actual contemplation of the parties in regard to quantities of rock. Based on this record we have no quarrel with that conclusion. However, we can certainly understand how the board of claims might reach a different result, and in invoking the equitable adjustments clause, award Purcell only an additional $100,000.00. Based upon the ultimate findings of the chancellor the interpretation by the board of the equitable adjustments clause was erroneous, but not arbitrary, capricious or illegal.

Stated another way, what happened was the board of claims either made a mistake of fact or a mistake of law, or both. From such erroneous interpretation, as we understand the teachings of *Norman, supra*, there is no review in the courts pursuant to the writ of certiorari. *See also Yokley v. State of Tennessee*, (Tenn.App.M.S., filed at Nashville, April 27, 1981).

Until the supreme court opened the door to the very narrow review offered by the common law writ of certiorari in *Norman, supra,* the decisions of the board of claims were final and nonreviewable. T.C.A. § 9–8–216; *Hill v. Beeler,* 199 Tenn. 325, 329, 286 S.W.2d 868, 869 (1956); *Quinton v. Board of Claims,* 165 Tenn. 201, 216, 54 S.W.2d 953, 957 (1932). However, we have not yet advanced to the stage where the review given those decisions will be of the same scope as that of lower court decisions. Maybe some day that expanded scope of review will come. If erroneous findings of fact or law of the board of claims were reviewable in this court, our holding in this cause would be different.

During the pendency of the board of claims proceeding T.C.A. § 29–10–101 was passed allowing Purcell to file suit against the State of Tennessee in chancery court for its claim against the state pursuant to the contract. At that point Purcell had the option of discontinuing or staying its effort before the board of claims and pursuing the litigation in chancery court pursuant to T.C.A. § 29–10–101, or electing to pursue the claim at the board level, foregoing the statutory claim in chancery court—but not both. Both remedies were not consecutively available to him and having elected to proceed through the board of claims we believe he is now bound thereby. See the ELECTION OF REMEDIES discussion, *infra*, pp. 407–409.

If this were not so, chaotic conditions would be created involving consistency of result. Finality to proceedings wherein a person seeking recourse against the State of Tennessee has more than one remedy from which to select would indeed be long in coming. Every potential claimant is entitled to an adjudication of his or her claim. But that entitlement is limited to one full and fair hearing before a forum which has the power to ultimately dispose of the controversy with the force, weight and finality of a court decision. See the RES JUDICATA discussion, *infra*, pp. 406–407.

Though the doctrine of sovereign immunity is in many respects outmoded and has been consistently diminished by legislation and judicial interpretation because of the basic inequities contained therein, we do not believe that the state should be put in a worse position than other litigants simply because it is the sovereign. To adopt plaintiff's theory herein that it is permissible to bring the claim before the board of claims and de novo in chancery court—not to mention at the building commission level with court review—would do that.

We are sympathetic with Purcell and have frankly tried to determine how its legitimate contract claim could be sustained without doing irremediable harm to the doctrines of res judicata and election of remedies, or the teachings of *Norman, supra,* regarding the limited scope of review of actions of the board of claims. However, we have been unable so to do. In our view existing law simply does not allow us to sustain the trial court.

## THE RES JUDICATA QUESTION

The decisions of the board of claims, a "quasi-judicial" body, have the weight of a judgment at law. *Schoenly v. Nashville Speedways, Inc.,* 208 Tenn. 107, 114, 344 S.W.2d 349, 352 (1961).

T.C.A. § 9–8–207 and § 29–10–101 created concurrent jurisdiction for final resolution of contract disputes between the state and private claimants in the board of claims and in the Chancery and Circuit Courts of Davidson County.

The plaintiff cannot allege that the statutory waiver of immunity in any way stripped the board of claims of its jurisdiction to hear contract disputes. It prosecuted its petition for relief before the board of claims to judgment, even though the statutory waiver became effective while its petition was pending before the board. Indeed, during pendency of its action before the board of claims Purcell filed a complaint in the Chancery Court of Davidson County based on the statutory waiver of immunity.

Even then, with the complaint for breach of contract pending in the chancery court,

Purcell chose not to dismiss its petition before the board of claims but chose instead to pursue an identical claim involving the same facts and parties by way of two independent, mutually exclusive actions. In fact, it even attempted to further pursue the board of claims' judgment by the writ of certiorari in chancery court.

> Res judicata may be successfully pleaded when a judgment on the merits exhausts or extinguishes the cause of action on which it was based, and is an absolute bar to a subsequent suit between the same parties upon the same cause of action, and concludes such parties and their privies not only as to all matters that were actually put in issue and determined, but also as to all matters which might have been put in issue and determined. *National Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 377, 380 S.W.2d 793, 796 (1964)
>
> "The rule of res adjudicata is based on the principle not only that the same parties, in the same capacities, should not be required to litigate anew a matter which might have been determined and settled in a former litigation, but on the higher ground, that public policy dictates that litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel." (Citations omitted.) *Ibid.*

The doctrine of res judicata applies to orders of administrative agencies and boards in Tennessee. *Polsky v. Atkins,* 197 Tenn. 201, 206, 270 S.W.2d 497 (1954).

The general rule concerning the doctrine of res judicata as it applies to orders of administrative agencies and boards is:

> Like a judgment of a court, an administrative adjudication is res judicata or conclusive between the same parties on the same cause of action not only as to all matters litigated, but as to all matters which could have been litigated in the proceeding with respect to such cause. An administrative decision denying or dismissing a party's claim on the merits precludes such party from obtaining, in a judicial proceeding not designated for review of the administrative decision, the relief denied by the administrative agency, whether upon the same ground as urged in the administrative proceeding, or upon another ground. An administrative decision granting a party the relief asked for prevents such a party from obtaining additional relief in a judicial proceeding upon the same ground. 2 Am. Jur.2d *Administrative Law* § 502 (1962)

The sixth circuit has held that both res judicata and collateral estoppel are applicable to decisions of administrative agencies acting in a judicial capacity. *Tipler v. E. I. duPont deNemours and Co.,* 443 F.2d 125, 128 (6th Cir. 1971). *See also United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081 (5th Cir. 1969); 2 K. Davis, Administrative Law Treatise § 18.02, at 609 (Supp.1970).

> When an administrative agency is acting in a judicial capacity and resolving disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. (Citations omitted.) *United States v. Utah Construction & Mining Co., supra*

In the instant matter, the application of the doctrine of res judicata is even more clearly highlighted because the plaintiff determined to have the decision of the board of claims reviewed by the chancellor, who upheld its decision. Yet this very chancellor was then asked to retry de novo the same questions raised before the board.

We are of the opinion that the chancellor erred in allowing Purcell to go forward with its complaint based on T.C.A. § 29-10-101 in that this procedure was barred by the res judicata effect of a judgment at law which must be given to the decision of the board of claims, *Polsky v. Atkins, supra,* and approved by the chancellor as to legal sufficiency, involving the same issues and parties. As was appropriately stated in *Polsky, supra,* by Mr. Justice

Burnett: "Fair play demands such a holding."

THE ELECTION OF REMEDIES QUESTION

We further believe that to allow recovery herein beyond that rendered by the board of claims, as approved by the chancery court, would violate the fundamental precepts of the doctrine of election of remedies.

That doctrine is well-recognized in Tennessee. *Barger v. Webb*, 216 Tenn. 275, 280, 391 S.W.2d 664, 666 (1965).

The general rule with regard to judicial and administrative forums is:

> Where a remedy in the judicial or in the administrative forum is available to the same party in the same situation, he has his choice as to which remedy he will take. Sometimes the statute itself provides that a party must elect between the remedies and may not avail himself of both. Under such a statute, a party who elects to proceed before the administrative tribunal and is denied relief on the merits there, may not later bring the common-law action which he might have chosen in the first instance, and one who obtains relief on his claim in the administrative tribunal is bound by such award and may not later institute a common-law action to seek additional relief on the same claim. *The same result is reached under a statute which, while it does not expressly require election of remedies, plainly precludes resort to a subsequent court action on a claim which has been adjudicated by an administrative agency.* (Emphasis supplied.) 2 Am.Jur.2d, *Administrative Law*, § 787 (1962)

When this rule is applied to these facts, it is clear that it is a bar to Purcell's T.C.A. § 29–10–101 chancery court suit against the state after pursuit of the board of claims remedy to judgment.

■ Although the statutory remedy afforded by T.C.A. § 29–10–101 became available after Purcell filed its petition for damages with the board of claims, Purcell nonetheless chose to continue to pursue its remedies before the board of claims even after it filed its complaint in chancery court based on the new remedy. It not only prosecuted the petition for damages to conclusion before the board, but when dissatisfied with the result, asked the chancellor to review it—all the while in effect holding the T.C.A. § 29–10–101 action in reserve.

The essential element or requirement of the doctrine of election of remedies is that the remedies be inconsistent, *Hutchison v. Pyburn*, 567 S.W.2d 762, 765 (Tenn.App. 1977).

In the instant case, the undisputed facts are that the building commission awarded Purcell, on its claim against the state, a sum slightly in excess of $84,000.00. Since that action was properly adjudicated as not involving a "contested proceeding" and does not have the force of judgment we do not believe it served as a bar to further pursuit of the claim. Purcell then proceeded to prosecute a petition for damages before the board of claims and was successful in obtaining an additional $100,000.00. It might have received $400,000.00, and if so, the state would have been powerless to complain. It was this remedy before the board of claims which Purcell chose to pursue to judgment after the general assembly made available to it the statutory cause of action. This was a conscious, deliberate choice on the part of Purcell. The board award could have been greater than the court award. Unfortunately for plaintiff, it was less.

Having elected this remedy and with the clear possibility of inconsistent remedies—the board reaching one result and the chancellor another—we believe the chancellor erred in allowing Purcell then to litigate an identical claim before the chancery court based on T.C.A. § 29–10–101. Although the chancellor has held in Purcell's favor and awarded it nearly the entire amount sued for, the likelihood of inconsistency is obvious. Indeed the ultimate inconsistent finding of the chancellor on the T.C.A. § 29–10–101 claim with that previously made by the board of claims is the best evidence of the inherent possibility thereof.

If plaintiff's procedural actions herein are allowed, in a future case the board of claims might make an award and then a trial judge, listening to a case based on T.C.A. § 29 10 101, might determine that the plaintiff is entitled to no relief at all or vice versa. What if the chancellor in the instant case had decided that plaintiff's case was worth less than the $100,000.00 award by the board of claims? Would the state be entitled to a refund from Purcell for the difference? Would the board of claims award be rendered null and void by such a decision by the chancellor on a T.C.A. § 29–10–101 claim? We think not. These inherent possibilities—indeed probabilities—of inconsistency mandate the holding herein that a claimant seeking relief from the state arising out of contract must elect between the remedies of board of claims review as authorized by T.C.A. § 9–8–207, et seq., and chancery court resolution as provided by T.C.A. § 29–10–101.

■ The purpose of the doctrine of election of remedies is to prevent double redress for a single wrong. *Barger v. Webb,* 216 Tenn. 275, 281, 391 S.W.2d 664, 666, 667 (1965). There plaintiff's acceptance of a settlement in a conversion suit against a bank that had repossessed her property was held an election estopping her from subsequent suit for a statutory remedy under the law then regulating repossessions under conditional sales contracts. In *Hutchison v. Pyburn,* 567 S.W.2d 762, 765 (Tenn.App. 1977), Judge Drowota citing with approval *Barger v. Webb, supra,* noted that "since allowance of the statutory remedy would have provided double redress for a single wrong, it was found inconsistent with the cause of action for conversion in which plaintiff had gained a settlement." In the instant case the allowance of the statutory remedy, T.C.A. § 29–10–101, would cause a like result since Purcell had already been afforded "its day in court" before the board of claims.

Purcell is seeking double redress for a single wrong by bringing an action based upon identical claims in two different forums. (Actually three, but the building commission action does not rise to the dignity of a final judgment in a "contested proceeding" as does that of the board of claims.) Allowing a claimant to pursue identical claims in two forums would be prejudicial to the state and would place it in a position of having to defend against the same cause of action brought by the same plaintiff twice. T.C.A. § 29–10–101 merely provided a new remedy from which to select, not a cumulative one.

## BASIS FOR REJECTION OF PLAINTIFF'S THEORY

As the chancellor pointed out in ruling on the state's motion to dismiss the T.C.A. § 29–10–101 suit, the act "simply allows the claim to be pursued in a different forum and adds an alternative to establish procedures." He ultimately overruled that motion to dismiss but stayed the suit "until the termination of the actions in the Court of Appeals (contesting the building commission decision) and the board of claims."

Purcell argues forcefully that this action of the trial court prohibited it from possibly electing a remedy, thus, giving it an answer to the defenses of res judicata and election of remedies. Plaintiff contends that: "There was no choice but to exhaust this theory of recovery before the alternative contract action would be entertained by the trial court." If this statement were correct, plaintiff should and we believe, would prevail. However, this is not what occurred.

■ There was no different "theory of recovery," either before the board of claims, or pursuant to T.C.A. § 29–10–101 in chancery court. The theory was the same and if plaintiff did not get the relief it wanted in one forum, the board of claims, to wit: full payment of its claim, it wanted a back-up forum to seek that relief, to wit: chancery court. However, by no stretch of the imagination did the trial court's memorandum or resulting orders *require* Purcell to pursue the board of claims action. Purcell could have terminated that proceeding at any time and could have pursued its contract suit in chancery court. See *Barnes v. Walker,* 191 Tenn. 364, 234 S.W.2d 648 (1950).

The court had already ruled that the state's main technical defense—that the statute did not apply to contracts executed prior to its passage—was without merit. Plaintiff's contention that it had "no choice but to proceed before the Board of Claims and obtain its decision" simply will not stand careful analysis. The action there could have been withdrawn at any time, or it certainly could have been stayed while any possible attack upon plaintiff's right to litigate pursuant to T.C.A. § 29–10–101 was resolved. Plaintiff's next sentence in its brief following the above quoted contention is, however, revealing. It states: "Only after the erroneous decision of the Board of Claims did it become necessary to proceed in the trial court for relief." In other words, Purcell concedes that had it been awarded that to which it thought it was entitled in the board of claims that would have been a sufficient remedy. Having not received what it thought was its fair entitlement after *electing* to pursue the board of claims' remedy plaintiff used its "reserve forum," the chancery court, and its "reserve theory," T.C.A. § 29–10–101, to obtain that to which it claimed entitlement.

This remedy was unavailable as a decision of the board of claims has the weight of a judgment and operates to bar other actions on the same subject matter. *Schoenly v. Nashville Speedways, Inc., supra.* The plaintiff having elected between two alternative forums for relief, it must abide the decision of the first. *Barger v. Webb, supra.*

Our resolution of the matter in this fashion makes consideration of the other issues regarding the claims and cross-claims of the parties moot, except for one. We find no indication from the record before the board of claims that plaintiff's request for retainage of $7,000.00 owed it under contract was before that body. Since this sum is in no way related to the claim for extras (or the state's counterclaims which should have likewise been resolved by the board of claims by way of setoff) we hold that under T.C.A. § 29–10–101 plaintiff is entitled to a judgment for that retainage amount as well as pre-judgment interest thereon from the date of final completion of the subject project. Likewise, we hold that Purcell is entitled to be paid interest on the $100,000.00 award of the board of claims from the date of that award.

Accordingly, this cause is reversed and remanded to the trial court for the entry of a judgment to plaintiff against the state for $107,000.00 plus interest to be computed and awarded consistent with this opinion. The costs are taxes against Purcell.

REVERSED AND REMANDED.

TODD, P. J., and CORNELIUS, Special Judge, concur.