IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2015 Session

**GARY FINLEY v. MARSHALL COUNTY, ET AL.**

**Appeal from the Chancery Court for Marshall County**
**No. 016507     J. B. Cox, Chancellor**

_____

**No. M2015-00313-COA-R3-CV – Filed January 20, 2015**
_____


Property owner sought recognition that his property had a nonconforming use as a rock quarry. We have determined that the property owner's previous appeal before the board of zoning appeals, for which he did not file a petition for writ of certiorari in chancery court, is res judicata as to the present matter.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

John Cordwell, II, Nashville, Tennessee, for the appellant, Gary Finley.

Barbara G. Medley, Lewisburg, Tennessee, for the appellee, Marshall County, Tennessee.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Gary Finley owns property located at 2100 Caney Springs Road in Marshall County ("the County"). In 1989, prior to Mr. Finley's ownership of the property, the County enacted zoning restrictions, and the property at issue was classified as A-1 Agriculture-Forestry.

In 2007, Don Nelson, the county zoning administrator, denied Mr. Finley's request to have his property recognized as having a nonconforming use as a rock quarry, in other words, to have his property "grandfathered in." Mr. Finley appealed this denial to the board of

zoning appeals ("BZA"), which considered the matter at its meeting on August 21, 2007. The matter was eventually moved to the next meeting, on September 25, 2007, at which the BZA took up Mr. Finley's request again. At the October, 16, 2007 meeting, the BZA voted unanimously to deny Mr. Finley's request for grandfathered status. Mr. Finley did not file a petition for writ of certiorari to the chancery court.

In September 2011, Mr. Finley submitted additional documentation to the zoning administrator, Mr. Nelson, and again sought to have the property recognized as having a non-conforming use. Mr. Nelson denied Mr. Finley's request for grandfathered status.

Mr. Finley appealed the zoning administrator's decision to the BZA, which heard the appeal at its November 15, 2011 meeting. After a hearing and deliberation by the BZA, the BZA decided that the information provided by Mr. Finley had failed to establish proof of a preexisting nonconforming use. The BZA voted unanimously to affirm Mr. Nelson's decision. Mr. Finley filed a petition for writ of certiorari in the chancery court on April 12, 2012. On November 7, 2012, the court entered an agreed order whereby the parties agreed to remand the case back to the BZA for the BZA to meet on November 13, 2012 to reconsider Mr. Finley's request. The trial court dismissed the case with prejudice.

At the November 13, 2012 hearing, the BZA met again to consider Mr. Finley's case. The BZA voted unanimously to let its 2007 decision and its November 2011 decision stand. On January 14, 2013, Mr. Finley filed the petition for writ of certiorari at issue in the present appeal. He asserted that the decision of the BZA was "illegal, arbitrary, and capricious" and that "no other plain, speedy, or adequate remedy [was] available." The clerk and master issued the writ of certiorari, and the County filed the administrative record.

The case was heard on October 30, 2014, at which point both sides had the opportunity to argue their positions before the chancellor. The trial court entered a memorandum opinion on December 12, 2014 in which it made findings of fact and conclusions of law. The court reviewed the case under the common law writ of certiorari, codified at Tenn. Code Ann. § 27-8-101. In determining whether the BZA's decision not to reopen the case was arbitrary, the trial court went through the following analysis:

> First, did the BZA follow minimum standards of due process in its consideration of the matter on remand? The BZA published a public hearing. The BZA allowed input from interested parties and the public at large at the public hearing . . . . The BZA closed the public hearing and addressed the request at its meeting that occurred after the public hearing. At that meeting the BZA took the time to review the matter that was previously reviewed in 2011 and take into consideration the other affidavits presented by Mr. Finley.

2

The BZA heard from Mr. Finley's counsel who was given ample opportunity to address the issue. The Court cannot say that Mr. Finley did not enjoy minimum due process.

Secondly, did the BZA misrepresent or misapply a legal standard? The BZA addressed burden of proof in its hearing and had previously addressed it with Mr. Finley. There is no evidence in the record that they misapplied or misrepresented an applicable legal standard.

Thirdly, was the decision of the BZA based on ulterior motives? It is clear from the record that the BZA was tired of seeing Mr. Finley on this particular issue. Had they chosen to wholeheartedly refuse to review his request, there would be a basis to believe that they had an ulterior motive. That is not what occurred here. There is no indication in the record that there was an ulterior motive to deny the request.

Lastly, did the BZA violate applicable constitutional standards in conducting its review? The answer to that is clearly in the negative. The BZA took an explanation from counsel as to their role in considering Mr. Finley's request. These instructions included an admonition to look at the request with fresh eyes. Will Wilson asked for clarification of the question and indicated that he was considering whether the new information presented in 2011 would change the board's mind about its previous decision.

Mr. Nelson took the time to explain the decision that he reached in 2011 and he went through the packet of information page by page so the BZA could consider it. The record also reflects that the BZA took the time to review the prior record presented in the 2011 hearing and that [County] Attorney Shofner had requested that the BZA review the record relied upon by Mr. Dalton on behalf of Mr. Finley. The BZA took the time to review that record, apparently at length.

Was the BZA the most artful in its approach to once again reviewing the proof, probably not, but that is not the standard. The standard is whether there is material evidence in the record to support the decision of the BZA. It is clear to this Court that the BZA took the time and effort required under law and consistent with its agreement to reconsider the matter and in fact did fully and painstakingly reconsider the matter. The BZA's decision about whether to allow a grandfathered status for Mr. Finley was a product of considering all of the evidence from the 2011 hearing plus the public hearing materials from the 2012 public hearing.

This record is devoid of a single piece of evidence that will relate the operation of the quarry, as a quarry, to the relevant time frame when the ordinance was put in place. Later proof of activity outside the ordinance notwithstanding, there is no evidence relating back to there being an active

quarry in operation that had not been abandoned in 1989. The BZA is free to weigh the credibility of the witnesses it has before it and the Court may not substitute its judgment for the judgment of the BZA. More than one (1) witness testified that there had been some quarrying activity ongoing since 1998. At least one (1) witness testified that there had not been quarrying activity there since the 1970's. Other witnesses testified that they had never seen any quarrying activity going on. No witness testified that quarrying was occurring in 1989 or for any relevant time period to the BZA's inquiry until the mid 90's.

The trial court found material evidence to support the BZA's decision and therefore upheld that decision. In an order entered on January 14, 2015, the trial court decreed that the decision of the Marshall County BZA, "made at its November 13, 2012, meeting, to deny [Mr. Finley's] request for recognition as a legal nonconforming ("grandfathered") use as a rock quarry on his property located at 2100 Caney Springs Road, Chapel Hill, Marshall County, Tennessee, is hereby upheld." Mr. Finley appeals from that decision.

ISSUES ON APPEAL

Mr. Finley has raised a myriad of issues on appeal. We find that these issues can be summarized as follows: (1) Whether the trial court erred in failing to apply the statutory writ of certiorari instead of the common law writ of certiorari; (2) whether the BZA applied an incorrect legal standard—regarding the burden of proof or the interpretation of certain legal terms—in its consideration of Mr. Finley's case; (3) whether the BZA deprived Mr. Finley of due process; (4) whether the trial court erred in finding that the record contained material evidence to support the decision of the BZA; and (5) whether the trial court erred in finding that the BZA decision was not based on ulterior motives. Mr. Finley further seeks an award of attorney fees pursuant to Tenn. Code Ann. §§ 29-37-101–29-37-106, the Equal Access to Justice Act of 1984.

The BZA argues that the trial court did not have subject matter jurisdiction to hear this case. In our view, the issue is better stated as whether the 2007 decision of the BZA is res judicata as to the present case.

ANALYSIS

Under Tennessee law, "[t]he doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to quasi-judicial determinations of administrative agencies." *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991); *see Sullivan v. Wilson Cnty.*, No. M2011-00217-COA-R3-CV, 2012 WL 1868292, at *10 (Tenn.

Ct. App. May 22, 2012) (recognizing *Morris* as source of res judicata and collateral estoppel rules regarding administrative decisions in Tennessee). As long as "'an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.'" *Morris*, 832 S.W.2d at 566 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

When is an administrative agency acting in a quasi-judicial or judicial capacity? This depends upon whether the agency's actions are legislative or administrative. The test for determining whether a governmental action is legislative or administrative in nature is "whether it 'makes new law or executes one already in existence.'" *State ex rel. Moore & Assoc., Inc. v. West*, 246 S.W.3d 569, 575 (Tenn. Ct. App. 2005) (quoting *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990)). The "action by a board of zoning of appeals is an administrative rather than a legislative act" because it executes an existing law rather than making a new law. *Weaver v. Knox Cnty. Bd. of Zoning Appeals*, 122 S.W.3d 781, 783-84 (Tenn. Ct. App. 2003). In this context, the "term 'administrative is used interchangeably with judicial or quasi-judicial.'" *Id.* at 784 (quoting *McCallen*, 786 S.W.2d at 638). Decisions by a board of zoning appeals are quasi-judicial decisions "that involve applying the facts of the situation before the board to the applicable ordinance or requirement, *i.e.*, enforcing, applying, or executing a law already in existence." *State ex rel. Moore*, 246 S.W.3d at 576.

The doctrine of res judicata applies to the determinations of administrative agencies "acting in a quasi-judicial capacity" when the following conditions are met:

> (1) the issues decided in adjudicative proceedings are identical; (2) the prior adjudication resulted in a judgment on the merits; (3) the proceedings involve the same parties; and (4) the parties had a full and fair opportunity to litigate the issue in the prior proceeding.

*Wayman v. Transp. Licensing Comm'n of Metro. Gov't of Nashville & Davidson Cnty.*, No. M2009-01360-COA-R3-CV, 2010 WL 1293796, at *3 (Tenn. Ct. App. Apr. 5, 2010) (citing *Mangrum v. Wal-Mart Stores, Inc.*, 950 S.W.2d 33, 36 (Tenn. Ct. App. 1997)). The general rule concerning the application of the doctrine of res judicata to decisions by administrative boards has been summarized as follows:

> Like a judgment of a court, an administrative adjudication is res judicata or conclusive between the same parties on the same cause of action not only as to all matters litigated, but as to all matters which could have been litigated in the proceeding with respect to such cause. An administrative decision denying or

dismissing a party's claim on the merits precludes such party from obtaining, in a judicial proceeding not designated for review of the administrative decision, the relief denied by the administrative agency, whether upon the same ground as urged in the administrative proceeding, or upon another ground. An administrative decision granting a party the relief asked for prevents such a party from obtaining additional relief in a judicial proceeding upon the same ground.

*Purcell Enters., Inc. v. State*, 631 S.W.2d 401, 407 (Tenn. Ct. App. 1981) (quoting 2 AM. JUR. 2D *Administrative Law* § 502 (1962)).

The question in the present case, then, is whether the October 2007 BZA decision is res judicata with respect to the present case. The issue before the BZA in 2007 was whether Mr. Finley's property had a non-conforming use as a rock quarry, or was grandfathered in, pursuant to Tenn. Code Ann. § 13-7-208(b)(1), which provides:

In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

Tennessee Code Annotated section 13-7-208(g) specifies that subsection (b) shall not apply if the establishment "ceases to operate for a period of thirty (30) continuous months and the industrial, commercial, or other business use of the property did not conform with the land use classification as denoted in the existing zoning regulations . . . ." The burden of proof is upon the party seeking the protection of the grandfather statute. *B.F. Nashville, Inc. v. City of Franklin*, No. M2003-00180-COA-R3-CV, 2005 WL 127082, at \*12 (Tenn. Ct. App. Jan. 21, 2005) (citing *Coe v. City of Sevierville*, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000)). Thus, in order to qualify as having a non-conforming use, Mr. Finley had to show that the property was used as a rock quarry prior to the enactment of the zoning ordinance in 1989 and that the use continued without any cessation of thirty continuous months.

After Mr. Nelson denied Mr. Finley's initial request to have his property recognized as having a non-conforming use in 2007, Mr. Finley appealed to the BZA, which first

considered his appeal on August 21, 2007. Mr. Finley's attorney provided the BZA with "written documents and displayed photographs of the quarry." During the public hearing, one of the BZA members brought to the attention of Mr. Finley's attorney documents evidencing a previous lessee of the property having been denied a rezoning request to operate as a quarry by the Marshall County Planning Commission in August 2000; and a previous sale contract (dated October 2, 1999) contingent upon the BZA granting the proper variance to allow the new owner to operate a "crushed stone processing operation." Mr. Finley's attorney requested more time to review this information, and the matter was moved to a later meeting.

At the September 25, 2007 meeting, Mr. Finley's attorney stated that a representative from the Tennessee Department of Environment and Conservation ("TDEC") was available to answer questions about air quality and regulations concerning quarries; and she produced a letter from a representative of the Division of Water Pollution Control. Members of the BZA asked the TDEC representative, Carol Williams, several questions about the procedures of her office with regard to quarries. Ms. Williams stated that her office did not have any record of a quarry at the site in question. Mr. Nelson spoke and presented his reasons for denying Mr. Finley's request. He stated that he "was not denying activity had occurred on the property in question, but rather questioned whether that the activity that had occurred, would qualify as a legally operating business," which would have tax returns, "something he had repeatedly asked Mr. Finley for." Mr. Nelson provided the BZA with the following documents:

1)      Contract for Sale of Real Estate, dated October 2, 1999 in which the contract was contingent on the property receiving the proper zoning/variance to operate as a crushed stone processing plant.
2)      Minutes from the Marshall County Board of Zoning Appeals dated December 21, 1999, which showed the request to operate a crushed stone business, was denied.
3)      A Rezoning Application dated July 26th 2000, to operate an extraction, processing, sales operation for crushed stone on the property in question.
4)      Minutes from the Marshall County Planning Commission dated August 15, 2000, in which the re-zoning application was sent to the Marshall County Commission with an unfavorable recommendation.
5)      A copy of Resolution 00-9-10 which showed that the resolution requesting a re-zoning to operate an extraction, processing, and sales operation of crushed stone on the property in question died on the floor for lack of a second.
6)      A copy of a letter from Don B. Craig with the Mine, Safety and Health Administration which showed no record of a mine in existence at the

7

property in question.

The BZA voted to take the matter under advisement.

The BZA considered Mr. Finley's request for grandfathered status again at a meeting on October 16, 2007. The county attorney summarized the written opinion she had produced at the request of the BZA on Mr. Finley's appeal. According to the BZA minutes, the county attorney stated:

[B]ased on the proof submitted to the Board over the past two meetings, by means of photographs, affidavits, and arguments, it was her legal opinion that Mr. Finley had not met the burden of proof showing that a rock quarry should be grandfathered for that specific parcel[.] [T]he legal burden to show continuous use from the time of adoption of the Zoning Resolution of Marshall County to the present time with no more than a thirty month gap in between, . . . [H]er recommendation was that the Board deny Mr. Finley's request and affirm the ruling by Mr. Nelson.[1]

The BZA voted unanimously to deny Mr. Finley's request for grandfathered status. A member of the BZA asked that the Board include a discussion of its reasons for rejecting Mr. Finley's request and stated that Mr. Finley had not met his burden of proof "of operation of a quarry; members of the Board concurred, and added no proof of legal blasting on the [property] had ever been produced, as well as documentation of a business operation." Mr. Finley did not file a petition for writ of certiorari to the chancery court as a result of the BZA's decision.

In September 2011, Mr. Finley submitted additional documentation to the zoning administrator, Mr. Nelson, and again sought to have the property recognized as having a non-conforming use. Mr. Nelson again denied Mr. Finley's request for grandfathered status. In a letter dated September 26, 2011, Mr. Nelson stated that he had reviewed the two sets of documents provided to him by Mr. Finley, one a thirteen-page packet, the other a one-page letter explaining the desired use for the property. Mr. Nelson wrote:

As you know, the Marshall County Board of Zoning Appeals met on August 21, 2007 and September 25, 2007 to hear your appeal of my decision to deny the grandfather status of a quarry located at 2100 Caney Springs Road. You

---

[1] In the attorney's full memorandum to the BZA, she pointed out: "Mere removal of rock no further than current grade constitutes a borrow pit, which holds no special zoning requirement. No evidence was produced regarding legal blasting, crushing or quarrying since 1989."

8

and your attorney were given the opportunity to make your case. As you also know, the Marshall County Board of Zoning Appeals decided that you had not proven your case and denied your appeal by a unanimous vote. You had the opportunity to appeal their decision, but did not; the time period to appeal that decision has expired.

After reviewing all of the documents provided, Mr. Nelson determined that they "do not support any change in the zoning status or classification of 2100 Caney Springs Road" and that Mr. Finley's "request for nonconforming ('grandfathered') use status is denied."

Mr. Finley appealed the zoning administrator's 2011 decision to the BZA, which heard the appeal at its November 15, 2011 meeting. Mr. Finley's attorney explained that he had presented the zoning administrator with new affidavits from some of the same persons who had given affidavits for Mr. Finley's 2007 request for grandfathered status. He felt that these new affidavits showed activity that would support a non-conforming use.

Mr. Nelson went through the thirteen-page packet provided by Mr. Finley with the BZA to explain his decision. The first three pages were handwritten letters from Mr. Finley. The third letter addressed federal mining, which falls under the Mine Safety and Health Administration ("MSHA"); Mr. Nelson stated that the MSHA had no jurisdiction over local zoning approval. He further opined that the letter offered no proof of a rock quarry in operation on the property in question prior to the adoption of the zoning ordinance in September 1989 until the present without an interruption lasting thirty continuous months. The packet also included an application for a business license dated August 31, 2011, a blanket certificate of resale from the Tennessee Department of Revenue effective September 1, 2011, a certificate of business tax registration effective September 1, 2011, a certificate of registration from the Tennessee Department of Revenue dated August 31, 2011, a minimum business license and gross sales receipt dated September 14, 2011, an inquiry about other permits dated July 19, 2011, and a letter from Don Owen, NPDES Program Manager Division of Water Pollution Control, Mining Section TDEC. After reviewing all of the evidence, Mr. Nelson "stated that he could find nothing to support a nonconforming use status, or any change in the zoning status of 2100 Caney Springs Road."

Two persons at the hearing spoke in opposition to Mr. Finley's assertions concerning the property. They stated that they had lived in the area for years and had not seen any quarrying activity on the property. Both stated that they were willing to complete an affidavit. After some discussion, the BZA decided that the information provided by Mr. Finley had failed to establish proof of a preexisting nonconforming use. The BZA voted unanimously to affirm Mr. Nelson's decision.

9

Mr. Finley filed a petition for writ of certiorari in the chancery court on April 12, 2012. On October 29, 2012, the court entered an agreed order whereby the parties agreed to remand the case back to the BZA for the BZA to meet on November 13, 2012 to reconsider Mr. Finley's request. The case was then dismissed with prejudice.

At the November 13, 2012 hearing, the BZA heard testimony from ten people. Some merely expressed opposition to having a rock quarry in that location. Chris Gilbert testified that the last time he could remember the quarry being active was in 1970 or 1971, when Highway 99 was being built. Since that time, "[v]ery little, if any action, has been done there, . . . maybe a few loads of rock had been hauled out of there that was already crushed or something and I think maybe that the Warner brothers hauled some shock rock out of there and shot some and hauled some . . . and that stopped several years ago." Mr. Gilbert stated that, "other than that, there have been no actual quarrying done there on that property in forever . . . ."

Mike Hatten, the city manager of Chapel Hill, stated that, for the past ten years, "I have not recognized, been told or been aware of any activity [taking] place on that property. At this time, it is a non-functional property."

Carl Cooper stated that he had "been acquainted [with] that rock quarry [for] 65 or so years, I know when it went into operation, a fellow by the name of Minifees operated there, they operated there for several years during the time Chris [Gilbert] spoke of, then shortly thereafter they ceased operations." Mr. Cooper testified that the electrical services remained there for a few more years after the operations ceased and were then removed; he remembered this because he had enjoyed shooting doves off of the wires. He further stated that the property "has not been used as a rock crusher of any legal manner," but "there was some loose stuff hauled away since then." He himself had hauled away loose rock that was already ground up because his niece owned the property at the time.

Debbie Hill testified that she had owned property adjacent to the property at issue for about twenty years. She stated that, "As far as I know and as long as I have owned that piece of property, I know that the rock quarry has not operated, at all, and . . . maybe some loose stuff has been carried out . . . ."

Tony Buholz testified that he had looked at satellite imagery on a website called Terra Server that showed, from 1997 to the present, "it doesn't look like anything has happened in that area."

Mr. Finley's attorney, Robert Dalton, spoke next. He argued that satellite photos had been provided to the BZA previously and showed that "there has been an expansion during

this period." He referenced the affidavit of Tammy Lewis as attesting that there had been some blasting. Mr. Dalton stated that "that blasting has been very small amounts of blasting over years and most of the extraction done has been by mechanical means" and had gone unnoticed. According to Mr. Dalton, the affidavits submitted were from those who were performing the activities ("extracting this rock, digging the rock out and carrying it off") and from those who witnessed it.

At this point, the public hearing was closed. The county attorney, Ginger Shofner, explained to the BZA the posture of the case. Because Mr. Finley had been before the BZA in 2007 and the board had voted him down, that "issue is basically put to rest." But, Ms. Shofner explained, the BZA retained the discretion to "to reopen a previous decision based on new evidence." In response to questions from the BZA, Mr. Nelson read into the record the definition of "mining and quarrying operations" from the Marshall County Zoning Resolution:

> An establishment engaged in excavation or extraction of any earth products or natural mineral deposit, except where such excavation is for purposes of grading for a building lot or a roadway, where grass sod is removed to be used for landscaping, or where materials are extracted for use on that same lot by the owner of the property. Specifically excluded from this use is grading and removal of dirt associated with an approved site plan or subdivision or excavations associated with; where topsoil or clay is removed as part of a legitimate business; and for the improvement of, a bona fide agricultural use.

Marshall County Zoning Ordinance § 7.020.

Ms. Shofner explained that the BZA needed to decide if there was evidence that justified reopening its prior decision from 2007 denying Mr. Finley grandfathered status. Mr. Finley stated that he had not brought any new evidence not submitted at the September 2011 hearing because this was just a rehearing of the September 2011 hearing (due to a failure to prepare a record of the hearing). Mr. Nelson again went through each page of the evidence presented by Mr. Finley. His question when looking at each piece of evidence was: Does "this prove there was a quarry in existence prior to Zoning 1989 through present without interruption?" Mr. Nelson found nothing in the packet of new evidence to indicate that a quarry was in operation from 1989 through the present.

The BZA also considered the minutes from the November 15, 2011 hearing and the new affidavits placed into the record at that hearing. During the discussion, Mr. Nelson

11

clarified that there was nothing prohibiting Mr. Finley from operating a "barrow pit,"[2] where he could remove existing rock to grade. Operating a quarry, by contrast, would involve the use of mechanical means to extract the rock. The BZA voted unanimously to let its 2007 decision and its November 2011 decision stand.

The chancery court affirmed the decision of the BZA in an order entered in January 2015, and Mr. Finley filed a petition for writ of certiorari from the chancery court's decision.

So, is the October 2007 BZA decision res judicata with respect to the present case? We must consider the four requirements set out in *Wayman*, 2010 WL 1293796, at *3. First, are the issues decided identical? *Id.* We find that they are. In both instances, Mr. Finley is asking the BZA to recognize his property as having a non-conforming use, and the key issue is the same: whether the property was used as a quarry prior to September 1989 and continuously since then with no cessation for a period of thirty continuous months. Second, did the first adjudication result in a judgment on the merits? *Id.* Mr. Finley did not file a petition for a writ of certiorari of the October 16, 2007 BZA decision. Consequently, after sixty days, that decision became a final judgment. Tenn. Code Ann. § 27-9-102; *Shafer v. City of Dickson*, No. M2000-03175-COA-R3-CV, 2002 WL 1787952, at *5 (Tenn. Ct. App. Aug. 2, 2002) (stating that common law writ of certiorari must be filed within sixty days of the order or judgment); *Morris*, 832 S.W.2d at 566 (concluding that "an unappealed, final, administrative determination by an administrative agency" constituted a "judgment on the merits that became final"); *see also Sullivan*, 2012 WL 1868292, at *10 (stating that "Tennessee courts give the agency's determination the same preclusive effect as they would if the agency had been a court of law"); *Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 510 N.E.2d 373, 376-77 (Ohio 1987) (holding doctrine of res judicata applied to BZA decisions on applications for variance absent change of circumstances; affirming denial on res judicata grounds of subsequent application for variance to permit operation of sand and gravel quarry).

The third question in the res judicata analysis is, did the proceedings involve the same parties? The 2007 proceedings and the proceedings on appeal both involved Mr. Finley and the Marshall County zoning authorities. The fourth question is, did the parties have a full and fair opportunity to litigate the issue in the prior proceeding? In 2007, Mr. Finley appeared at three hearings. He had the opportunity to present evidence during at least two of those hearings, in August and September 2007; the October 2007 hearing was mainly for the purpose of announcing the BZA's decision. Mr. Finley does not assert on appeal that he was denied the opportunity to present evidence in 2007.

---

[2]Also referred to as a "borrow pit."

12

We conclude that the four conditions necessary for res judicata to apply are met here. Therefore, the 2007 BZA decision is conclusive "'not only as to all matters litigated, but as to all matters which could have been litigated in the proceedings with respect to such cause.'" *Purcell*, 631 S.W.2d at 407 (quoting 2 AM. JUR. 2D *Administrative Law* § 502). Any "new evidence" presented with the 2011 petition—*i.e.* evidence not available at the time of the 2007 petition—failed to support a finding that the quarry was active prior to September 1989 and continuously thereafter, without any continuous breaks of thirty months. Thus, the 2007 BZA decision is res judicata as to the current case, and all issues related to the current case are pretermitted.

CONCLUSION

The judgment of the trial court is affirmed. Costs of appeal are assessed against the appellant, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE